OPINION OF THE COURT
Edward H. Lehner, J.
Defendants move for an order (a) dismissing the complaint dated July 15, 1997 (the Complaint) of Gladliz, Inc. (Gladliz) pursuant to CPLR 3211 (a) (1) and (7) and 3016 (b) on the grounds that (i) Gladliz waived its right to seek damages (as opposed to specific performance or declaratory judgment), (ii) the Complaint fails to state a cause of action, (iii) the Complaint fails to plead fraud with sufficient specificity, and (iv) the allegations in the Complaint are refuted by the documentary evidence; and (b) assessing costs against Gladliz and its attorneys pursuant to part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR 130-1.1 et seq.).
Gladliz opposes the motion. Alternatively, it asks that (a) the motion be held in abeyance while it be permitted to conduct discovery (CPLR 3211 [d]), or if the Complaint is dismissed, (b) it be allowed to interpose an amended complaint asserting claims for intentional interference with contractual relations and prima facie tort.
background
Gladliz was the tenant of ground floor retail space (the Space) at 537 Broadway (the Building). The Building is owned by defendant Castiron Court Corp. (Castiron). The individual defendants other than Penzer are members of Castiron’s Board of Directors and reside in the Building. Defendant Penzer, a real estate broker, was involved in the transaction whereby Gladliz’s lease for the Space was ultimately assigned to Guess? Inc. (Guess). Defendant Dolgenos Newman & Cronin, L. L. P. (DNG) is a law firm that represents all defendants.
Gladliz rented the Space for a 10-year term, from June 1, 1995 through May 31, 2005, pursuant to a lease dated May 25, 1995 (the Lease). Paragraph 66 of the Lease provides, in pertinent part, that: “Tenant shall have no right to assign without the express written approval of the Landlord, which *394 shall not be unreasonably withheld”. Paragraph 42 of the Lease, which limits Gladliz’s remedies in the event Castiron unreasonably withholds its consent, provides: “Wherever Landlord in this lease agrees not to unreasonably withhold his consent, it is understood and agreed that Tenant’s sole remedy in connection with any refusal on the part of the Landlord to give its consent in writing shall be limited to bringing an action for declaratory judgment or for specific performance and in no event shall Tenant bring an action for damages against the Landlord or shall Landlord be liable to the Tenant for the Landlord’s refusal to grant its consent.”
Paragraph 66 of the Lease contains a list of circumstances under which a withholding of consent by Castiron to a proposed assignment would not be deemed “unreasonable”, including where the tenant was “(iv) * * * in default under any of the terms, covenants or conditions of this lease” as of the date either when consent is requested or upon the effective date of the assignment.
Soon after entering into possession of the Space, Gladliz entered into negotiations with The Gap, Inc. (the Gap) for an assignment of the Lease. Under the terms negotiated, it is asserted that the Gap agreed to pay Gladliz a “lease acquisition” fee of $675,000. In May 1996 Gladliz requested Castiron’s consent to the proposed Gap assignment. Castiron did not consent, but instead commenced a legal proceeding against Gladliz based on its alleged nonpayment of rent. Gladliz contends that defendants’ acts were part of a conspiracy strategically designed to “block” the proposed assignment. Cast-iron contends that the proposed assignment transaction included a number of significant modifications of the Lease, including an option by the Gap to extend the term for an additional five years. In a letter dated July 23, 1996, Castiron notified Gladliz that the request to assign the Lease to the Gap was denied because (a) “you are in default of your obligation to * * * pay rent and other amounts due under the Lease, since you have failed to pay rent and late charges,” (b) “there is no provision in the Gap Term sheet for a guarantee of the principals of the Gap,” and (c) “the Gap Term Sheet incorrectly identifies you as the landlord, does not recognize the existence of the Lease, and requires a modification of the Lease to extend the term of the Lease for five years.”
In November 1996 Gladliz began negotiations with Designs, Inc. (Designs) concerning a possible assignment of the Lease. Although the papers do not discuss this proposed assignment *395 in great detail, it is asserted that under this proposal Gladliz was to receive $500,000. By letter dated January 3, 1997, Cast-iron denied Gladliz’s request to assign the Lease to Designs.
On March 19, 1997, Gladliz informed Castiron of its proposal to assign the Lease to Guess. The proposed assignment contemplated Castiron’s assent to numerous lease modifications, including: (a) an option in favor of Guess to extend the term of the Lease for seven years, (b) an expansion of tenant’s right to sublet and assign the Lease, (c) an expansion of tenant’s right to make alterations, and (d) the abolition of tenant’s obligation to post a security deposit. Under the proposed transaction, Guess was to pay Gladliz a “purchase price” of $500,000.
Ultimately, on May 15, 1997, agreement was reached between the parties whereby the Lease was assigned to Guess with Castiron’s approval. This transaction entailed the negotiation and drafting of a number of agreements which were executed by Castiron, Gladliz, Guess and others, pursuant to which Castiron accepted Guess as the new tenant and agreed to various modifications of the Lease including, but not limited to, a seven-year extension of the Lease term. In connection with this closing, certain payments were made to Castiron, including (a) more than $28,000 representing rent and additional rent arrears owed by Gladliz, (b) $100,000 representing a payment to induce Castiron to consent to the modifications of the Lease, and (c) $14,880.38 representing Castiron’s legal fees and disbursements incurred in connection with the assignment transaction. For its part, Gladliz received a $500,000 fee from Guess, and Castiron released Gladliz and its guarantors from any further exposure under the Lease. Additionally, Gladliz represented that it had no claims against Castiron and that Castiron had breached no duties owed to Gladliz, stating that: “(ii) to the best of Gladliz’s knowledge, [Castiron] is not in default in the performance of any of the terms, covenants or conditions on the part of [Castiron] to be performed under the Lease or otherwise * * * [and] (iv) to the best of Gladliz’s knowledge, Gladliz has no claims or rights of action against [Castiron]”.
A few months later, Gladliz commenced this action. The Complaint contains seven causes of action, all of which seek monetary damages suffered by Gladliz allegedly as a result of defendants’ fraudulent conspiracy to illegally block each of Gladliz’s proposed assignments. Gladliz alleges that defendants, in furtherance of this conspiracy, wrongfully delayed *396 and raised objections to the proposed assignments. The damages which Gladliz seeks to recover as a result of Castiron’s conduct include: (a) $175,000 representing the difference between the $675,000 it was to receive from the Gap and the $500,000 amount it received from Guess, (b) $232,000 representing the rent for the Space from July 1996 through May 15, 1997, (c) $28,000 in rent arrears which Gladliz paid Castiron, (d) $15,000 representing Gladliz’s legal fees, and (e) $250,000 representing Gladliz’s business losses.
In support of its contention that defendants engaged in improper behavior, Gladliz relies on DNG’s billing records for the pertinent dates which, among other things, refer to a meeting held on May 24, 1996 to review the Lease and discuss issues “re proposed assignment and possible ways to block proposed assignment”. Gladliz contends that these billing statements of DNG confirm that defendants (a) conspired to fraudulently deny plaintiff permission to assign the Lease and other tortious conduct, and (b) conspired to interfere with plaintiff’s business relationships with several prospective subtenants, thereby denying plaintiff financial benefits which it had a reasonable expectation of receiving.
Defendants have raised a number of reasons why the Complaint must be dismissed, including, inter alia, that (a) the limitation of remedies clause is valid and enforceable and precludes an action for monetary damages, (b) New York does not recognize a cause of action in tort for conspiracy, fraudulent conspiracy, or conspiracy to commit a tort, and (c) none of the causes of action set forth in the Complaint adequately states a cause of action for fraud because (i) the allegations lack the requisite specificity (CPLR 3016 [b]), and (ii) the material elements of fraud have not been pleaded.
A review of the Complaint shows that it is predicated on the theory that (a) Castiron unreasonably withheld its approval to Gladliz’s assignment requests made pursuant to the Lease, and (b) Gladliz is entitled to money damages as a result of the aforementioned unreasonable withholding of consent. However, as discussed below, (a) the limitation of remedies provision set forth in the Lease is valid, and (b) Castiron has presented documentary proof that its denials of consent were not unreasonable because (i) the assignments required significant modifications of the Lease, and (ii) Gladliz was in default in the payment of rent.
A “lease agreement, like any other contract, essentially involves a bargained-for exchange between the parties [and] *397 [a]bsent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party” (Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 67-68 [1978]). Here, Gladliz agreed that “[w]herever Landlord * * * agrees not to unreasonably withhold [its] consent”, Gladliz’s sole remedy shall be “limited to bringing an action for declaratory judgment or specific performance”, and that “in no event shall [Gladliz] bring an action for damages against [Castiron] or [Castiron] be liable to [Gladliz] in damages for [Castiron’s] refusal to grant its consent”.
In considering the enforceability of the limitations of remedies clause, the court initially notes that with respect to a commercial lease an absolute restriction on assignment without the landlord’s consent is clearly enforceable (Dress Shirt Sales v Hotel Martinique Assocs., 12 NY2d 339, 342 [1963] [“It is settled that, unless the lease provides that the lessor’s consent shall not be unreasonably withheld, a provision against subleasing without the lessor’s consent permits the lessor to refuse arbitrarily for any reason or no reason”]; see also, Mann Theatres Corp. v Mid-Island Shopping Plaza Co., 94 AD2d 466, 470 [2d Dept 1983]).
Here representatives of Gladliz and Castiron negotiated both a limitation on such absolute right on the part of the landlord to refuse to permit an assignment, as well as a limitation on the remedies available to the tenant should it challenge the reasonableness of any refusal to consent. There is no reason why such negotiated provisions should not be enforced. Parenthetically, it is noted that with respect to the statutory right to assign a residential lease, Real Property Law § 226-b provides that the only remedy available to a tenant whose landlord unreasonably withholds consent to an assignment is to be relieved of liability under the lease. Since all of the causes of action in the case at bar are premised on the landlord wrongfully withholding its consent to the proposed assignments, the Complaint is not viable. Moreover, the limitation of remedies clause clearly demonstrates that the particular damages sought herein were not “fairly within the contemplation of the parties to the contract at the time it was made”, and are thus not recoverable (Kenford Co. v County of Erie, 67 NY2d 257, 261 [1986]; see also, Ashland Mgt. v Janien, 82 NY2d 395, 403 [1993]).
The documentary evidence further shows that the proposed assignments were actually more in the nature of *398 proposals for extensive lease modifications, to which Castiron had no obligation to give its consent. Additionally, the Lease expressly provides that Castiron would not be deemed to have unreasonably withheld its consent to a proposed assignment where Gladliz was “in default under any of the terms, covenants or conditions of this lease” as of the date either when it requested such consent or upon the effective date of the proposed assignment. Here Gladliz expressly acknowledged that it was in default under the Lease, both when it sought Cast-iron’s consent to the proposed assignments and upon the effective date of the transaction with Guess. Thus, based on the evidence, any withholding of consent by Castiron was not unreasonable.
All of the causes of action in the Complaint are couched as a civil conspiracy by defendants. However, New York does not recognize a cause of action in tort for conspiracy (Wall St. Transcript Corp. v Ziff Communications Co., 225 AD2d 322 [1st Dept 1996]; MBF Clearing Corp. v Shine, 212 AD2d 478 [1st Dept 1995]; Plymouth Drug Wholesalers v Kirschner, 239 AD2d 479 [2d Dept 1997]). Allegations of conspiracy are permitted “only to connect the actions of separate defendants with an otherwise actionable tort” (Alexander & Alexander v Fritzen, 68 NY2d 968, 969 [1986]), which is not alleged here. Nor does New York law permit a cause of action based on a conspiracy to commit a breach of contract (Bereswill v Yablon, 6 NY2d 301 [1959]). Furthermore, a breach of contract will not be considered a tort unless a legal duty independent of the contract itself has been violated (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382 [1987]; Megaris Furs v Gimbel Bros., 172 AD2d 209 [1st Dept 1991]). No such showing has been made here.
Lastly, the causes of action set forth in the Complaint do not adequately plead a cause of action for fraud because the allegations are not sufficiently specific (CPLR 3016 [b]), and because the elements of a cause of action for fraud are not adequately alleged (see, Lanzi v Brooks, 54 AD2d 1057 [3d Dept 1976], affd 43 NY2d 778 [1977]).
Gladliz’s request for permission to conduct discovery pursuant to CPLR 3211 (d) is denied because it has failed to show that discovery would lead to or uncover any legally relevant information. Gladliz’s request for leave to interpose an amended complaint pursuant to CPLR 3211 (e) is also denied because, based on the evidence before the court, the alleged facts would not comprise a viable cause of action for intentional interfer *399 ence with contractual relations or a prima facie tort and, in any event, Gladliz has not submitted a proposed amended complaint for the court’s consideration.
Defendants’ request for the imposition of sanctions against Gladliz and its attorneys is denied.
In view of the above, the motion of defendants to dismiss the complaint is granted and the Clerk shall enter judgment accordingly.