**John PHILLIPS on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**AMERICAN INTERNATIONAL GROUP, INC., and First SunAmerica Life Insurance Company, Defendants.**

**No. 07 CIV. 802(JSR).**

United States District Court, S.D. New York.

July 30, 2007.

Marshall H. Fishman, Peggy J. Farber, Kramer Levin Naftalis & Frankel LLP, New York, Jeffrey Monroe Grantham (Pro Hac Vice), Edward Morris Holt (Pro Hac Vice), Maynard, Cooper & Gale, P.C., Birmingham, AL, for American International Group, Inc. and First Sunamerica Life Insurance Company.

Joe R. Whatley, Jr. (JW–1222), Deborah Clark–Weintraub (DW–6877), Ilze C. Thielmann (IT–8734), New York, W. Daniel Miles, III (Pro Hac Vice), Joseph H. Aughtman (Pro Hac Vice), Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, AL, for Plaintiffs.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

By motion dated April 3, 2007, defendants moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss all of plaintiff's claims. By Order dated May 30, 2007, the Court granted that motion. This Memorandum Order states the reasons for that ruling and directs the entry of final judgment.

The pertinent allegations of the Complaint, taken most favorably to plaintiff for purposes of this motion, are as follows:

Plaintiff John Phillips is an individual who resides in Monroe County, New York. Complaint ¶ 6. Defendant American International Group, Inc. ("AIG") is a Delaware corporation headquartered in New York. *Id.* ¶ 7. Defendant First SunAmerica Life Insurance Company ("SunAmerica") is a New York corporation that is "a member of the AIG family of financial services companies." *Id.* ¶ 8. Plaintiff John Phillips is bringing this action against defendants on behalf a class of individuals who purchased "Bonus Annuity Contracts … issued by SunAmerica." *Id.* ¶ 9.

The Complaint alleges that on April 22, 2004, "Defendants and/or their agent John Quinn approached Plaintiff about purchasing an annuity from the Defendants" and "Plaintiff completed an application form for a Bonus Annuity." *Id.* ¶ 14. The application form stated that the interest rate in the first year would be 5.4%, which included a 3.0% "bonus" payable during the first year. *Id.* This application was included in a contract issued to plaintiff (the "Annuity Contract"), for which plaintiff made an initial premium payment of $28,083.06. *Id.* ¶¶ 15–16.

In addition, according to the Complaint:

The Contract contained the following additional representations:

a. "Interest is credited to your annuity daily. All interest rates quoted are effective annual interest rates. This is the yield that results after interest has compounded daily for a full year."

b. "No change will be made that adversely affects your rights unless the change is required by law."

*Id.* ¶ 15; *see id.* ¶¶ 18, 31.

However, the Complaint's quotation of these two provisions is incomplete. Where a plaintiff selectively quotes language from a document that is integral to a complaint, as is the Annuity Contract here, the Court may appropriately consider the full text of that document. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Companies, Inc.,* 75 F.3d 801, 809 (2d Cir.1996).

The first quote in paragraph 15 of the Complaint appears in a section of the Annuity Contract entitled "Interest," which reads, in full, as follows:

**Interest**

Interest is credited to your annuity daily. All interest rates quoted are effective annual interest rates. This is the yield that results after interest has compounded daily for a full year.

We set interest rates according to the following guidelines:

> • *We guarantee your annuity will always earn at least 3% interest,* regardless of future economic conditions. The table on page 12 shows the minimum value we guarantee. These values could be greater if we pay or credit interest in excess of the 3% guaranteed rate.

Affidavit of Frederick J. Sdao, dated April 2, 2007 ("Sdao Affidavit"), Ex. E ("Annuity Contract") at 5–6 (emphasis added).

The second quote in paragraph 15 of the Complaint appears in a section of the Annuity Contract entitled "Changes," which reads, in full, as follows:

> **Changes.** No change will be made that adversely affects your rights unless the change is required by law. However, subject to any required regulatory approval, we may modify the contract so as to qualify as an annuity under the provisions of the Internal Revenue Code, as may be amended. You will be provided with notice of any change affecting your contract, and, if required, the right to reject such changes.

*Id.* at 9.

On September 15, 2005, "Defendants and/or their agent John Quinn approached Plaintiff about purchasing another annuity from Defendants," and plaintiff again completed an application form for a "Bonus Annuity." Complaint ¶ 17. The form stated that the interest rate in the first year would be 6.05%, which included a 3.5% "bonus" payable during the first year. *Id.* The application was made part of a contract that contained the same provisions as the first Annuity Contract discussed above. *Id.* ¶¶ 17–18; Sdao Affidavit ¶ 7. Plaintiff made an initial premium payment of $12,074.07. Complaint ¶ 19.

The central allegation of plaintiff's Complaint is that "the actuarial design, pricing and structure of the annuities sold to Plaintiff recouped the entirety of the bonuses promised in the Bonus Annuity Contracts through undisclosed penalties, costs and/or charges." *Id.* ¶ 20. These "undisclosed penalties, costs and/or charges Defendants exacted from Plaintiff precluded Plaintiff from permanently realizing the benefit of the promised bonus." *Id.* ¶ 21.

On this basis, plaintiff alleges claims against all defendants for breach of contract, *id.* ¶¶ 30–33, breach of fiduciary duty, *id.* ¶¶ 34–37, fraud, *id.* ¶¶ 38–43, negligent misrepresentation, *id.* ¶¶ 44–50, civil conspiracy, *id.* ¶¶ 51–53, and unjust enrichment, *id.* ¶¶ 54–58, and alleges claims against SunAmerica for violation of N.Y. General Business Law § 349(a), *id.* ¶¶ 59–63, and for violation of New York Insurance Law § 4226, *id.* ¶¶ 64–70. All these claims, as the parties agree, are governed by New York law.

*First,* with respect to the breach of contract claim, defendants argue that this claim must be dismissed because plaintiff's Complaint does not identify any term of the contract that was breached. *Rattenni v. Cerreta,* 285 A.D.2d 636, 728 N.Y.S.2d 401, 402 (N.Y.App. Div.2d Dep't 2001) (holding that a "complaint cannot be construed to state a viable cause of action sounding in breach of contract" where "it does not allege any contractual provision upon which this claim is based"). Plaintiff offers a number of responses.

To begin with, plaintiff argues that defendants breached an obligation inherent in the word "bonus" as it appears in each of the Annuity Contracts. Complaint ¶ 31. The two Annuity Contracts at issue promised, respectively, that the interest rates in the first years of the respective contracts would include 3.0% and 3.5% "bonus" rates payable during the first

years, Complaint ¶¶ 14, 17, and plaintiff does not allege that these bonus rates were not paid. Rather, plaintiff argues that a "bonus" would "inherently have to be a 'permanent' bonus," and defendants breached their promise to provide a "permanent" bonus by altering the interest rates paid after the first years of the respective contracts in order to recoup the bonuses. Pl. Opp'n Mem. at 5. Plaintiff admits, however, that defendants "had the right to set the interest rates for years subsequent to year one," Pl. Opp'n Mem. at 1, so long as those rates complied with the minimum base rate under the contracts, see Annuity Contract at 6 (guaranteeing that "your annuity will always earn at least 3% interest"), and plaintiff does not allege that defendants paid less than the minimum base rate. In this circumstance, where the interest rates defendants paid in subsequent years complied with the express terms of the Annuity Contracts, those rates cannot be construed to breach any independent promise embedded in the word "bonus." See, e.g., Delaney v. Am. Express Co., 2007 WL 1420766, at *4 (D.N.J.2007) ("In the Court's view, Plaintiffs attach unwarranted significance to the term 'bonus.' "); id. at *5 (holding that "[t]he fact that [defendants'] base rates were lower in subsequent years ... cannot support a claim for breach of contract because those rates comply with the express terms of the Annuity Contract").

■ Next, plaintiff argues that defendants breached the contract clause that provides that "[n]o change will be made that adversely affects your rights unless the change is required by law," Complaint ¶ 31 (quoting Annuity Contract at 9), by "effectively alter[ing] the interest rate ... paid to Plaintiff ... specifically and intentionally 'to recoup and recapture the entire bonus credited to Plaintiff in year one,' " which "adversely affect[ed] Plaintiff's right

to recover the promised bonus," Pl. Opp'n Mem. at 6 (quoting Complaint ¶ 21). But this "no change" clause merely provides that no change will be made to any term of the Annuity Contracts, and, just as plaintiff has not alleged a breach of any term of the contracts, similarly plaintiff has not alleged that defendants changed any term of the contracts, where the interest rates paid after the first years of the respective contracts complied with the express terms of the Annuity Contracts.

■ Lastly, plaintiff argues that defendants breached the contract clause that provides that:

"[i]nterest is credited to your annuity daily. All interest rates quoted are effective annual interest rates. This is the yield that results after interest has compounded daily for a full year."

Complaint ¶ 31 (quoting Annuity Contract at 5); Pl. Opp'n Mem. at 6. But this language, standing alone, merely explains that interest rates quoted elsewhere in the Annuity Contracts are "effective annual interest rates" and does not make any independent promise about what those interest rates are.

■ In sum, plaintiff's Complaint cannot be construed to state a viable cause of action sounding in breach of contract because the Complaint does not allege any contractual provision upon which this claim is plausibly based. See Rattenni, 728 N.Y.S.2d at 402.

■ Second, with respect to plaintiff's claim of breach of fiduciary duty, defendants argue that this claim must be dismissed because the Complaint does not allege a fiduciary relationship cognizable under New York law. "New York courts do not follow a per se rule prohibiting the recognition of a fiduciary relationship in the insurance context," but a plaintiff still must allege facts indicating a "relationship

closer than arm's-length." *Dornberger v. Metropolitan Life Ins. Co.*, 961 F.Supp. 506, 546 (S.D.N.Y.1997); *see also Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 264, 724 N.Y.S.2d 3 (N.Y.App. Div. 1st Dep't 2001). Even taking account of the liberal standards governing notice pleading under the federal rules, plaintiff has not alleged any facts suggesting that the relationship between plaintiff and defendants was anything other than arm's-length. At best, the Complaint alleges that "[d]efendants ... held themselves out as experts on annuities" and "[p]laintiff believed and trusted the Defendants and relied upon them and their apparent expertise in purchasing the Bonus Annuity Contracts."[1] Complaint ¶ 24. But this paragraph merely recites factors that are generally present in insurance contracts. Under New York law, the presence of these factors "offer[s] no reason to depart from the general rule that the relationship between the parties to a contract of insurance is strictly contractual in nature. No special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer ...." *Batas*, 281 A.D.2d at 264, 724 N.Y.S.2d 3. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 255 A.D.2d 101, 102, 679 N.Y.S.2d 611 (N.Y.App. Div. 1st Dep't 1998) (finding insufficient allegations to support claim for "breach of fiduciary duty" where "[t]he alleged reliance and trust necessary for a finding of such relationship are stated in conclusory fashion ...", and defendant's superior knowledge of the actuarial assumptions, ... acquired as a result of its experience in selling insurance, does not create such a relationship"), *affirmed as modified*, 94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999).

■■ *Third*, with respect to plaintiff's fraud claim, defendants argue that the Complaint fails to adequately allege numerous elements of such a claim. Under New York law, the elements of common law fraud are "a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir.1987). Under Rule 9(b), Fed.R.Civ.P., "the circumstances constituting fraud or mistake shall be stated with particularity." To meet this standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993).

■ The Complaint here alleges that "the Bonus Annuity Contracts falsely represented and/or failed to disclose the following material facts, among others:"

a. That purchasers would be paid a rate of interest on their initial premium payment for one year that included a bonus of a specified percentage payable during the first year;

b. That the promised bonus rate of interest could not be permanently real-

---

1. By contrast, in *Dornberger*, on which plaintiff here relies, the court found that the plaintiff

alleges several facts from which the existence of a relationship of trust and confidence can be inferred. Plaintiff alleges that MetLife reached out to Americans in Europe, including Paul Dornberger, Plaintiff's husband. These Americans were likely concerned with taxes and the relationship between American law and foreign law. Plaintiff alleges that MetLife sought out these Americans through an advertising campaign aimed at assuaging their concerns and promising personalized service to handle questions and problems.

*Dornberger*, 961 F.Supp. at 546. No such facts are alleged in the instant case.

ized by Plaintiff and Class members because the actuarial design, pricing and structure of the Bonus Annuity Contracts recaptured the entire bonus through an undisclosed penalty, cost and/or charge; and

c. That the interest paid to Plaintiff and other Class members was substantially less than represented in the Bonus Annuity Contract.

Complaint ¶ 39. Although this paragraph is far from a model of clarity, nonetheless, when taken in the light most favorable to plaintiff, this paragraph may be read to allege that the Annuity Contracts made misleading partial disclosures when they represented that plaintiff would receive "bonus" rates of interest in the first years of the Annuity Contracts, *id.* ¶ 39(a), but failed to disclose that these "bonus" rates could "not be permanently realized" by plaintiff, *id.* ¶ 39(b), as a result of which plaintiff received "substantially less" interest than the Annuity Contracts, by their use of the term "bonus," represented to plaintiff, *id.* ¶ 39(c),

The court in *Delaney v. American Express Co.,* 2007 WL 1420766 (D.N.J.2007) evaluated a similar fraud claim. In that case, the plaintiffs alleged "that Defendants misrepresented that the 'annuity had a bonus interest rate to be paid in year one, and Plaintiffs [ ] would permanently realize the full benefit of the guaranteed bonus.'" *Id.* at *5 (alteration in original). The court found, however, that "the information provided in the Annuity Documents belie[d] such a claim," where "the Annuity Documents ma[de] perfectly clear that (1) the bonus rate applies to the first year only, (2) the base rate may change in

subsequent years, and (3) Defendants retained sole discretion to determine the rate in subsequent years, subject to a contractually guaranteed minimum rate." *Id.* at *5–*6. "In light of these disclosures,"[2] the court found "as a matter of law that Plaintiffs cannot establish the existence of a misrepresentation or omission of material fact in the Annuity Documents." *Id.*

In the instant case, too, the disclosures in the Annuity Contracts at issue belie plaintiff's claim that those contracts contain any misrepresentation or omission. As in *Delaney,* the Annuity Contracts here expressly provide that the bonus rates apply in the first years only, that the base rates may change in subsequent years, and that defendants retained sole discretion to determine the rates in subsequent years, subject to a minimum rate. In light of these disclosures, the fact that the Annuity Contracts did not disclose that the bonus rate of interest could not be permanently realized does not rise to the level of fraud. *See id.* at *6; *see also Gaidon,* 94 N.Y.2d at 350, 704 N.Y.S.2d 177, 725 N.E.2d 598 (holding that where insurer "revealed the possibility of a dividend/interest rate decline, but did not reveal its practical implications for the policyholder," this "partial disclosure" did not "constitute a 'misrepresentation or material omission' necessary to sustain a cause of action for fraud").

Of course, failure to plead with particularity will not lead to a dismissal *with prejudice* if plaintiff provides a reasonable basis for believing that he will be able to re-plead in a manner that will cure the defect. But when the Court inquired along these lines at oral argument, plaintiff

---

**2.** In addition to the disclosures noted above, the annuity documents at issue in *Delaney* stated that "[i]n return for the additional first-year rate on this annuity the base rate is lower than it would have been had the additional first-year rate not been applied." *Dela-*

*ney,* 2007 WL 1420766 at *6. However, this additional disclosure merely emphasizes what is plain from the disclosures cited above: that the bonus rate applies in the first year only, and that defendants retained discretion to set lower rates in subsequent years.

was only able to refer the Court to paragraph 21 of the existing Complaint, *see* transcript, May 3, 2007 ("tr."), at 28, which alleges:

> Specifically, Defendants sold Bonus Annuity Contracts that promised bonus rates that sometimes exceeded the gross earnings on the pool of assets supporting them. As a result, Defendants designed the Bonus Annuity Contracts to contain undisclosed penalties, costs and/or charges that resulted in an increased "spread," which was designed to recoup and recapture the entire bonus credited to Plaintiff in year one and compensate Defendants for the higher cost of capital/surplus strain associated with Bonus Annuity Contracts. The undisclosed penalties, costs and/or charges Defendants exacted from Plaintiff precluded Plaintiff from permanently realizing the benefit of the promised bonus.

Complaint ¶ 21. When, however, the Court inquired as to the basis for these conclusory allegations, plaintiff's counsel admitted that plaintiff "*can't provide [the Court] with any evidence beyond that*" already alleged in the Complaint, which is inadequate on its face to make out a particularized claim of fraud. *See* tr. at 30–31 (emphasis added). In these circumstances, the fraud claim must be dismissed with prejudice.

■■■ *Fourth*, with respect to plaintiff's negligent misrepresentation claim, defendants argue that plaintiff has not alleged a "special relationship" with defendants, as New York law requires. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir.2000) ("Under New York law, the elements for a negligent misrepresentation claim" include that "the defendant had a duty, as a result of a special relationship, to give correct information"). Such a special relationship exists where defendants "possess unique or specialized expertise" or "are in a special position of confidence and trust with the injured party." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). As already noted with respect to the fiduciary duty claim, plaintiff has not alleged any facts suggesting that defendants were in a special position of confidence and trust with plaintiff. Further, under New York law, a "defendant's superior knowledge of the actuarial assumptions and the variables affecting [an insurance policy], acquired as a result of its experience in selling insurance," does not constitute the unique or specialized expertise necessary to establish a special relationship. *Gaidon*, 255 A.D.2d at 102, 679 N.Y.S.2d 611.

■■■ *Fifth*, with respect to plaintiff's unjust enrichment claim, defendants argue that this claim must also be dismissed because "[t]o establish a claim for unjust enrichment, Plaintiff must establish that the Plaintiff performed services for the Defendant which resulted in the Defendant being unjustly enriched," and plaintiff has not alleged that he has performed services for defendants. *Bello v. New England Fin.*, 2004 WL 1305515, at *6 (N.Y.Sup.Ct. 2004). In *Bello*, the plaintiff "ha[d] not performed any services for the Defendants," and instead had merely "paid a premium to purchase an insurance policy" *Id.* In that circumstance, the court dismissed the plaintiff's unjust enrichment claim. *Id.* That same result is required here.[3]

---

**3.** As part of plaintiff's claim for unjust enrichment, plaintiff asks that the Court establish a constructive trust. Complaint ¶ 56. "To be entitled to a constructive trust under New York law, a party must establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *Brand v. Brand*, 811 F.2d 74, 77 (2d Cir.1987). Plaintiff's

*Sixth*, with respect to plaintiff's claim against SunAmerica under N.Y. General Business Law § 349(a), defendant SunAmerica correctly notes that a plaintiff bringing a claim under § 349(a) "must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Gaidon,* 94 N.Y.2d at 344, 704 N.Y.S.2d 177, 725 N.E.2d 598 (internal quotation marks omitted). Plaintiff maintains that he has met this burden because, even though he "does not dispute that the bonus interest was initially credited to his account," SunAmerica nonetheless deceived him where, "unbeknownst to him, this bonus intent [sic] was illusory, as it would be recaptured by Defendants in subsequent years." Pl. Opp'n Mem. at 24. However, SunAmerica's alleged failure to disclose that the interest rates after year one would be set so as to recoup the "bonus" is not misleading in a material way under § 349(a) where the Annuity Contracts expressly stated that defendants retained the right to set interest rates in those subsequent years, subject to a guaranteed minimum, *see* Annuity Contract at 6; Pl. Opp'n Mem. at 1, and where plaintiff does not allege that SunAmerica paid less than the guaranteed minimum.

*Seventh*, with respect to plaintiff's claim against SunAmerica under N.Y. Insurance Law § 4226, plaintiff alleges that SunAmerica violated this law because "SunAmerica's application forms and Bonus Annuity Contracts contained materially misleading misrepresentations and omissions regarding the bonus rate of interest that would purportedly be paid to Plaintiff." Complaint ¶ 65. However, as noted, plaintiff has not pointed to any specific contractual provision that is misleading in this regard, and has admitted that defendants had the right to set interest rates after year one under the contracts.

*Eighth* (and last), with respect to plaintiff's conspiracy claim, it is well settled that if the underlying acts that the parties conspired to commit do not constitute any violation of law—as the preceding discussion shows—then the conspiracy claim must likewise be dismissed. *See, e.g., Gladliz, Inc. v. Castiron Court Corp.,* 177 Misc.2d 392, 398, 677 N.Y.S.2d 662 (N.Y.Sup.Ct.1998)

The Court has considered plaintiff's other arguments but finds them without merit. For the foregoing reasons, the Court reconfirms its Order dated May 30, 2007 in all respects. The Clerk of the Court is hereby directed to enter judgment in defendants' favor dismissing the Complaint with prejudice.

SO ORDERED.

---

claim for a constructive trust fails not only because plaintiff's unjust enrichment claim fails, but also because, as noted, the Complaint alleges no facts that give rise to a fiduciary relationship. *See Gaidon,* 255 A.D.2d at 102, 679 N.Y.S.2d 611.