IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 18, 2006 Session

## EARL INGRAM AND CHRISTA INGRAM v. CENDANT MOBILITY FINANCIAL CORPORATION, CASSANDRA LEE DEES, AND JOHN L. DEES, JR., AND UNDERWOOD HOME INSPECTION

Direct Appeal from the Circuit Court for Loudon County
No. 7188     Hon. Russell E. Simmons, Jr., Circuit Judge

No. E2005-01423-COA-R3-CV  - FILED OCTOBER 5, 2006

Plaintiffs, house purchasers, sued defendant, seller, for breach of contract, negligent and fraudulent concealment, negligence, wilful and negligent misrepresentation, and violations of the Consumer Protection Act on the grounds the house was subject to flooding.  The Trial Court granted summary judgment.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Matthew J. Evans and John W. Elder, Knoxville, Tennessee, for appellants.

Ailsa Peppel Schuller, and Lars E. Schuller, Knoxville, Tennessee, for appellee.

### OPINION

This action arises out of the conveyance of a residence (the "Residence") by Cendant Mobility Financial Corporation ("Cendant") to Earl and Christa Ingram, and the subsequent flooding in the basement and living areas of the Residence. The original builders and owners of the Residence were John and Cassandra Dees.  They built the Residence with John Dees acting as the general contractor.  After living in the Residence for four months, the Deeses sold it to Cendant.

As part of the sales transaction, the Deeses provided a signed disclosure statement

to Cendant, which stated they were not aware of any "water damage, flooding, drainage or grading problems." The Disclosure further provided, "Seller certifies that the information herein is true and correct to the best of the Seller's knowledge as of the date signed by the Seller."

Cendant contracted with U.S. Inspect, an independent real estate inspection firm, to inspect the Residence, which occurred on February 7, 2002. The inspector reported that there was no evidence of "ongoing water penetration" in the basement. The report also informed that some of the Residence's down-spouts were disconnected and others were missing extensions and splash-blocks, which allowed "roof run-off to empty onto the ground surface at the foundation walls." The inspector further noted the exterior wall surfaces were composed of stacked stone and that there were some gaps where the stone and soffit join at the front of the house. After a second inspection of the Residence, the inspector reported that these problems had all been repaired.

After receiving the Disclosure and the inspection reports, Cendant purchased the Residence from the Deeses, and entered into a "Sales Agency Contract" with Coldwell Banker Wallace & Wallace ("WW") to market the property. WW's initial disclosure to Cendant listed Debra Yankey as the "Designated Agent of the Seller." Yankey held this position from April 15, 2002 until closing. Ms. Yankey conducted a preliminary evaluation of the Residence to determine its readiness to be shown to prospective buyers, and saw no water in the Residence when she checked the property. She did not perceive any symptoms of water problems in the basement during her subsequent visits to the Residence, and on April 17, 2002, she prepared a Cendant "Vacant Property Report" in which she described the "Overall Condition" of the Residence to be "Very good," and reported the condition of the basement as "Good."

Earl and Christa Ingram first viewed the Residence in August of 2002, and were accompanied by Portia West, a broker affiliated with WW. On their second visit, the Ingrams noticed a musty odor in the basement, and they asked Ms. West to ask Ms. Yankey if there had been water damage in the basement. West told the Ingrams there had been no water damage. On September 9, 2002, the Ingrams and Cendant entered into a "Contract for Sale and Purchase of Real Estate" (the "Sales Contract"). The Ingrams obtained their own home inspection, and they asked the inspector to look for water damage. On September 12, 2002, the home inspector's report indicated neither a history of flooding at the Residence nor a propensity for flooding. After receiving the home inspection and touring the Residence on three to five separate occasions, the Ingrams closed the purchase of the Residence, but after moving into the Residence, they experienced water intrusion into the basement in February 2003.

On December 1, 2003, the Ingrams filed a Complaint against Cendant, Cassandra Lee Dees, and John L. Dees, Jr., for claims for "breach of contract, negligent and/or fraudulent concealment, negligence, willful and/or negligent misrepresentation as well [as] for violations of Tennessee's Consumer Protection Act and Residential Property Disclosure Act."

The Complaint charged that the defendants "willfully, knowingly, and/or negligently misrepresented the ability of the property to carry water and/or the flooding problems behind and

-2-

beside the plaintiffs' home." After defendants filed an Answer denying the plaintiffs' claims, Cendant filed a Motion for Summary Judgment on February 22, 2005. On May 19, 2005, the Trial Court entered an Order granting summary judgment in favor of the defendant.

Plaintiff raises these issues on appeal:

A.      Whether the Circuit Court erred in granting summary judgment against the Plaintiffs as to their claims for fraudulent and negligent misrepresentation.

B.      Whether the Circuit Court erred in granting summary judgment against the Plaintiffs as to their claim for fraudulent concealment.

C.      Whether the Circuit Court erred in granting summary judgment against the Plaintiffs as to their claim for breach of contract.

D.      Whether the Circuit Court erred in granting summary judgment against the Plaintiffs as to their claim for violation of the Tennessee Consumer Protection Act.

"The standard of review of a summary judgment determination is *de novo* without any presumption of correctness accorded the trial court's judgment." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). The moving party must do more than make conclusory assertions "that the nonmoving party has no evidence." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Instead, the moving party must either "affirmatively negate an essential element of the nonmoving party's claim" or "conclusively establish an affirmative defense that defeats the nonmoving party's claim." *Id.* at 215 n.5.

Plaintiffs argue that Cendant made fraudulent misrepresentations to the plaintiffs regarding the Residence. Cendant allegedly made these misrepresentations through Ms. Yankey and the Deeses' Disclosure:

In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Metro. Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992); *see also, Edwards v. Travelers Ins.*, 563 F.2d 105, 110-13 (6th Cir. 1977) (citing numerous Tennessee cases).

Alternatively, the plaintiffs argue that if the alleged misrepresentations were not

fraudulent they were at least negligent.

> Liability for negligent misrepresentation will result, if defendant is acting in course of his business, profession, or employment, or in transaction in which he has pecuniary interest, and defendant supplies faulty information meant to guide others in their business transactions, defendant fails to exercise reasonable care in obtaining or communicating information, and plaintiff justifiably relies upon information. In order to prevail in a suit for negligent misrepresentation, the plaintiffs must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information.

*Williams v. Berube & Assocs.,* 26 S.W.3d 640, 644-45 (Tenn. Ct. App. 2000) (citations omitted).

The plaintiffs allege that Ms. Yankey made misrepresentations regarding the Residence. They argue Ms. Yankey was Cendant's designated agent; therefore, Cendant is liable for her misrepresentations. Cendant counters that the Parties' Sales Contract expressly disclaims reliance on Ms. Yankey's representations. The relevant portion of the Sales Contract provides,

> This contract incorporates all prior agreements between the parties, contains the entire and final agreement of the parties, and cannot be changed except by their written consent. **Neither party has relied upon any statement or representations made by the other party or the sales representative bringing the parties together not contained herein.**

(Emphasis added). Exculpatory clauses are valid in Tennessee and are interpreted and enforced according to the plain meaning of their terms. *Ouzts v. Womack*, 160 S.W.3d 883, 885 (Tenn. Ct. App. 2004). The Sales Contract does not contain any of the representations allegedly made by Ms. Yankey. Therefore, the contractual language quoted negates the reliance element of both fraudulent and negligent misrepresentation as to Ms. Yankey's alleged misrepresentations.

As to the alleged misrepresentations made through Deeses' Disclosure, Cendant gave plaintiff the Deeses' Disclosure, which stated that the Deeses were not aware of any "water damage, flooding, drainage or grading problems." The plaintiffs argue that the Disclosure contains misrepresentations; therefore, Cendant made misrepresentations by providing this Disclosure to the plaintiffs.

Plaintiffs, however, released Cendant from responsibility or liability for the accuracy of this Disclosure. When Cendant provided this and other disclosure documents to the plaintiffs, the plaintiffs signed an acknowledgment which expressly refers to the Disclosure and states,

> Buyer(s) acknowledge that they have had, or will have had, prior to closing, the

opportunity to investigate the subject matter of the aforementioned disclosures on their own and have, or will have, investigated such to their satisfaction, or waived such investigation.

**Neither Cendant Mobility nor Cendant Financial Corporation have independently verified the contents of these documents and are not responsible for their accuracy**.

Buyer(s) acknowledge and agree that the purchase price of the property and other terms and conditions of this purchase agreement were negotiated with full knowledge and disclosure of the contents of the aforementioned disclosures; that said purchase price reflects the agreed-upon value of the property AS IS; including the aforementioned disclosures; to take the property subject to the disclosures; **and that Cendant Mobility shall have no responsibility or liability therefor**.

(Emphasis added).

Thus, the issue of whether the Disclosure contains misrepresentations is not an issue of material fact because the plaintiffs released Cendant from responsibility or liability for inaccuracies in the Disclosure.

We affirm the Trial Court on this issue because Cendant supported its summary judgment motion by presenting evidence showing that Ms. Yankey's alleged misrepresentations cannot be used to satisfy the reliance element. Cendant also established that plaintiffs released it from any liability for any alleged inaccuracies in the Disclosure.

Plaintiffs also allege that Cendant fraudulently concealed evidence of prior flooding. In this regard, "The tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538-39 (Tenn. 1998). Moreover a plaintiff must show that the defendant had actual knowledge of the defect allegedly concealed. *Akbari v. Horn*, 641 S.W.2d 506, 507 (Tenn. Ct. App. 1982).

The undisputed facts establish that Cendant did not know of any alleged defect. These facts are undisputed: (1) Cendant's knowledge of the Residence came exclusively from disclosures provided by the Deeses, home inspections conducted by U.S. Inspect, a real estate appraisal, and reports filed by WW and Ms. Yankey; (2) neither these documents nor those who prepared them provided any information to Cendant regarding flood damage or the other defects complained of by the Plaintiffs; (3) The Deeses' Disclosure stated that they were not aware of any "water damage, flooding, drainage or grading problems"; (4) U.S. Inspect reported that there was no evidence of "ongoing water penetration" in the basement and "no apparent problem" with the basement floor; (5) Ms. Yankey's "Vacant Property Report" to Cendant described the "Overall

Condition" of the Residence to be "Very good," and reported the condition of the basement as "Good"; (6) Ms. Yankey did not perceive any symptoms of water problems in the basement during her visits to the Residence; and (7) prior to closing, the plaintiffs' home inspector found no evidence of dampness in the basement and no evidence of moisture in the drywall. The only conclusion to be drawn from these undisputed facts is that Cendant did not know of any alleged defects.

Apparently, the plaintiffs' theory is dependant on the assertion that Ms. Yankey's alleged knowledge of prior flooding is imputed to Cendant.[1] Cendant's Statement of Undisputed Material Facts lists 126 facts supporting its position, and the plaintiffs dispute only three of these facts. These three factual disputes all arise from the plaintiffs' belief that Ms. Yankey's knowledge is imputed to Cendant. Ms. Yankey, however, was the designated agent of the seller; therefore, Ms. Yankey's knowledge cannot be imputed to Cendant. Tenn. Code Ann. § 62-13-406(c) (1997) ("There shall be no imputation of knowledge or information among or between clients, managing broker and any designated agent(s) in a designated agency situation").[2] Other than allegations of Ms.

---

[1]During the summary judgment hearing, the Circuit Court judge and Plaintiffs' counsel had the following exchange:

> The Court: I did not find anything . . . in what I was given that indicated there was any evidence that could be introduced that the information that Yankey had was ever transmitted to Cendant. Do you have anything on that . . . or are you depending on the agent's knowledge being the principal's knowledge?
>
> Plaintiffs' Counsel: Yes, Your Honor, I don't have any proof that shows that, (A), anyone from Ms. Yankey's office told this to Cendant or, (B) that Cendant even asked.

[2]WW gave Ms. Yankey sole responsibility for marketing the Residence. Therefore, Ms. Yankey was the "designated agent" for purposes of § 62-13-406(c). Tenn. Code Ann. § 62-13-102(7) (Supp. 2005) (defining "designated agent" as "a licensee who has been chosen by such licensee's managing broker to serve as the agent of an actual or prospective party to a transaction, to the exclusion of other licensees employed by or affiliated with such broker"). Cendant entered into a written agency agreement with WW. Therefore, Cendant satisfies the definition of "client" for purposes of § 62-13-406(c). Tenn. Code Ann. § 62-13-102(5) (Supp. 2005) (defining "client" as "a party to a transaction with whom the broker has entered into a specific written agency agreement to provide services").

The plaintiffs argue that § 62-13-406(c) does not prevent imputation of knowledge between a designated agent and that agent's client, but only prevents imputation from a designated agent to the managing broker, from the managing broker to other designated agents, and from those agents to their clients. (Reply Brief of Appellants, p. 4). The plain language of the statute, however, makes no such distinction. *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000) ("The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory

Yankey's knowledge, the plaintiffs have presented no evidence that Cendant knew of the alleged defects. Based on the foregoing, we conclude the Trial Court correctly granted summary judgment against the plaintiffs as to their fraudulent concealment claim.

Next, plaintiffs argue that Cendant's alleged misrepresentations and fraudulent concealment as well as the allegedly defective condition of the Residence constitute a breach of the Parties' Sales Contract. "'The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.'" *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998)). "The interpretation of [a] written agreement is a matter of law and not of fact." *APAC-Tennessee, Inc. v. J.M. Humphries Const. Co.*, 732 S.W.2d 601, 604 (Tenn. Ct. App. 1986). The Parties do not dispute that they entered into an enforceable contract. Thus, the issue is whether the alleged misrepresentations, fraudulent concealment, and allegedly defective condition of the Residence constitute a breach of the contract.

The plaintiffs' theory necessarily requires the existence of some guarantee in the Sales Contract regarding the condition of the Residence at the time of the sale. The Sales Contract, however, contains an "as-is" clause:

> Neither Seller nor Seller's agent has made any warrantees or representations, either expressed or implied (except as may have been given to the Buyer(s) in writing[)], as to the condition of the premises. Buyer(s) acknowledge that they have the opportunity to inspect the property or have the same inspected by others on their behalf except for any repairs specifically required to be made by Seller in accordance with the terms of this Agreement. **Buyer(s) understand that they are purchasing the property in "As-Is" condition**.

(Emphasis added). The Sales Contract further provides,

> The closing of this sale and acceptance of a Deed or Lease Agreement by Buyer(s) shall constitute acknowledgment that the condition of the premises and systems contained therein are acceptable and Seller shall have no further responsibility or obligation concerning the property, and **Buyer(s) waive all rights they may have concerning the condition of the property**.

(Emphasis added). The foregoing clauses are valid and enforceable in the absence of fraudulent misrepresentation and concealment. *Chadwick v. Spence*, No. W2003-00931-COA-R3-CV, 2004 WL 298367, at *5 (Tenn. Ct. App. Feb. 11, 2004); *Edmondson v. Coates*, No.

language, without a forced or subtle interpretation that would limit or extend the statute's application.").

-7-

01-A-01-9109-CH000324, 1992 WL 108717, at *11 (Tenn. Ct. App. May 22, 1992); *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947). Cendant has successfully negated the Plaintiffs' claims of fraudulent misrepresentation and concealment. Accordingly, the "as-is" clause is enforceable, and we affirm the Trial Court on this issue.

Finally, plaintiffs argue that summary judgment should not have been granted on their claim for violation of the Tennessee Consumer Protection Act ("TCPA"). They argue that the Act was breached by Cendant when it provided unverified information to the plaintiffs and misrepresented the condition of the property. The TCPA authorizes

> [a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, [to] bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1) (2001). The TCPA does not define the phrase "unfair or deceptive act or practice," but § 47-18-104(b) provides a list of specific examples. One of these examples is "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27) (Supp. 2005). The plaintiffs rely upon this broad catchall provision as well as *Smith v. Scott Lewis Chevrolet, Inc.,* 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992) which holds that "an unfair or deceptive act need not be willful or knowingly made to recover actual damages under the Consumer Protection Act." Essentially, plaintiffs argue that liability under the TCPA is never dependant upon evidence of knowledge; therefore, Cendant may be held liable even if it had no knowledge of the alleged misrepresentations and defects.

The Tennessee Supreme Court has rejected this argument in *Ganzevoort v. Russell*, 949 S.W.2d 293 (Tenn. 1997). In *Ganzevoort*, the plaintiff purchased a house and lot from the defendants, and prior to closing, the home was inspected by numerous professionals. They found only minor defects, which the seller repaired. After closing, however, the plaintiff discovered extensive water damage, and brought an action against the sellers and their real estate agent, charging that Tenn. Code Ann. § 47-18-104(b)(27) had been violated. *Id.* at 296. The Trial Court found for the plaintiff, and the Court of Appeals reversed. *Id.*

The Tennessee Supreme Court affirmed the Court of Appeals. *Id*. at 300. The Supreme Court held that the sellers' agent[3] was not aware of the water damage; therefore, he did not engage in an unfair or deceptive act. The Court's reasoning relied on *Klotz v. Underwood*, 563 F. Supp. 335 (E.D. Tenn.1982) for the standard that "the Tennessee Consumer Protection Act imposes

---

[3]The home was inspected by an F.H.A. home inspector, an independent real estate appraiser, a termite inspector, and the realtors.

no liability where the seller had no knowledge of the hidden defects and where an inspection by the purchaser would reveal the same information known by the seller." *Ganzevoort*, 949 S.W.2d at 299.

Responding to a Petition, the Supreme Court further reasoned,

The conclusion that the same definition does not apply in every case is consistent with the varying provisions of the Act defining unfair and deceptive acts in particular situations. Tenn. Code Ann. § 47-18-104(b)(1-26) and (28-30). A review of these provisions shows that though in most situations actionable fault is not a prerequisite to liability, in others, knowledge is a prerequisite, and in still others, intent to deceive is the standard. Consequently, the petitioner's second contention, that under the Act proof of deception is never dependent upon evidence of intent or knowledge, is contrary to the plain language of the Act.

The Court's opinion in this case defines the standard applicable to this case and other similar cases in which the general deterioration and non-apparent defects incident to the nature and age of the property being sold ordinarily are reflected in the purchase price, and in which the purchaser is given all the information regarding the condition of the property known by the person charged and not apparent to the purchaser. The acts of the realtor in this case were not deceptive or unfair.

The TCPA imposes no liability upon a seller of real estate where (1) the defect at issue is non-apparent, (2) the seller had no knowledge of the hidden defect, (3) the purchaser is given all the information regarding the condition of the property known by the seller, and (4) an inspection by the purchaser would reveal the same information known by the seller.

The undisputed facts of this case satisfy these foregoing conditions. Since the defect at issue was non-apparent, Cendant's home inspector reported that there was no evidence of "ongoing water penetration" in the basement and "no apparent problem" with the basement floor. In addition, the plaintiffs' home inspector found no evidence of dampness in the basement and no evidence of moisture in the drywall. Cendant had no knowledge of the hidden defect. Cendant's knowledge of the Residence came exclusively from disclosures provided by the Deeses, home inspections conducted by U.S. Inspect, a real estate appraisal, and reports filed by WW and Ms. Yankey. None of these sources indicated flood damage or the other defects complained of by the Plaintiffs. Plaintiffs' theory is dependant upon the belief that Ms. Yankey's alleged knowledge of prior flooding is imputed to Cendant, but such imputation is barred by § 62-13-406(c). Cendant gave the plaintiffs all the information regarding the condition of the property known by Cendant, and provided plaintiffs with the Deeses' Disclosure and all of U.S. Inspect's inspection reports.[4] The plaintiffs' inspection revealed the same information known by Cendant, and plaintiffs' home

_____

[4]The only information in Cendant's possession not provided to the Plaintiffs were Cendant's real estate appraisal and reports filed by WW and Ms. Yankey, but the Parties do not dispute that these documents contained no indication of the alleged defects.

inspector found no evidence of dampness in the basement or in the drywall. This is the same finding reported by Cendant's home inspector, and based upon these undisputed facts, plaintiffs cannot satisfy the standard established in *Ganzevoort*. Accordingly, we affirm the Trial Court on the summary judgment as to plaintiffs TCPA claim.

We conclude that the Trial Court correctly granted Summary Judgment on all issues raised by the plaintiffs, and we affirm the Trial Court's Judgment and remand, with the cost of the cause assessed against Earl and Christa Ingram.

_____
HERSCHEL PICKENS FRANKS, P.J.