Ronald **CIRZOVETO** on behalf of himself and all others similarly situated, Plaintiff,

v.

**AIG ANNUITY INSURANCE COMPANY, Defendant.**

Civil Action No. 2:06–CV–02534–BBD–STA.

United States District Court, W.D. Tennessee, Western Division.

May 6, 2009.

Anthony Charles Pietrangelo, Jonathan P. Lakey, Pietrangelo Cook, Memphis, TN, Joseph H. Aughtman, W. Daniel Miles, III, Beasley Allen Crow Methvin Portis & Miles, Montgomery, AL, Edward M. Holt, Maynard Cooper & Gale, P.C., Birmingham, AL, for Plaintiff.

Edward M. Holt, Jeffrey M. Grantham, Maynard Cooper & Gale, P.C., Birmingham, AL, Nathan A. Bicks, Taylor A. Cates, Burch Porter & Johnson, Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANT AIG ANNUITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

BERNICE BOUIE DONALD, District Judge.

## I. INTRODUCTION

Before this Court is Defendant AIG Annuity Insurance Company's ("Defendant" or "AIG Annuity") Motion for Summary Judgment (D.E. # 81). As discussed below, Defendant's motion is due to be granted.

## II. STATEMENT OF FACTS

On March 4, 2004, Mr. Ronald Cirzoveto ("Plaintiff") purchased an Eagle Nest Annuity for $46,684.45 that was designed and issued by AIG Annuity and sold by Union Planters Bank.[1] (D.E. # 88, Ex. A pp.

1. Union Planters is not a party to this action.

75:9–79:11). (*Id.*) The annuity paid 4.6% interest in year one, and at least 2.0% annual interest after the first year. (D.E. # 88, Ex. B p. 5). AIG Annuity designed the subject annuity product such that all expenses, including anticipated interest credited to an annuity owner's contract, were considered when determining the initial base rate of interest. (D.E. # 112–2, Ex. A p. 78–79).

In conjunction with purchasing the annuity, Plaintiff signed an Owner Acknowledgment Form ("Acknowledgment"), acknowledging that he had read and understood the disclosures regarding, among other contract features, the payment of interest rates and assessment of withdrawal charges. (D.E. # 89–5, Ex. B p. 2 and D.E. # 89–3, Ex. A part 2, p. 109:10–18) Specifically, the Acknowledgment form provided that the first year interest rate would be 4.6%, that it included a 2.15% enhancement payable for the first twelve (12) months only, and that after the first year, "the effective annual interest rate would be declared from time to time by the Company's Board of Directors and is guaranteed to be at least 2.0%." (D.E. # 89–5, Ex. B p. 2) The acknowledgment also contained a Withdrawal Charge Schedule illustrating withdrawal charges during the first five years of the annuity. (*Id.* p. 2). The annuity contract also contained a premium guarantee whereby Plaintiff would receive his entire premium, notwithstanding any applicable early withdrawal charges, if he decided to surrender his contract in full. (D.E. # 89–5, Ex. D, pp. 4–5). Plaintiff did not read the application, acknowledgment form or annuity contract when he purchased his annuity. (D.E. # 89–3, Ex. A. Part 3, p. 113:22–24).

Plaintiff made a series of partial withdrawals from his annuity and ultimately surrendered the annuity in August, 2005, less than eighteen months after the date of purchase. (*Id.* pp. 121:21–122–2). Upon surrender, Plaintiff received his entire premium, less previous partial withdrawals. (D.E. # 89–5, Ex. # p. 26).

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Sixth Circuit has explained that the Court must view the evidence "in the light most favorable to the non-moving party and draw all inferences in its favor," but cautions that "[n]ot just any alleged factual dispute between parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material fact.*" *Tri-Health, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 787 (6th Cir.2005) (citations omitted). "Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case." *Beecham v. Henderson County*, 422 F.3d 372, 374 (6th Cir.2005). To avoid summary judgment, the non-moving party must produce specific evidence showing there is a genuine issue for trial, and cannot merely rest on allegations. *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 466 (6th Cir.2003); *see also Hopson v. Daimler-*

*Chrysler Corp.*, 306 F.3d 427, 432 (6th Cir.2002).

## IV. DISCUSSION

### A. AIG Annuity Did Not Breach the Contract with Plaintiff.

Plaintiff's Complaint, which was filed as a putative class action, alleges claims for negligent and fraudulent misrepresentation, concealment, breach of contract, breach of fiduciary duty, negligent and/or wanton hiring, supervising and training, violation of Tennessee's Consumer Protection Act and conspiracy. (D.E. # 1). Because Plaintiff's annuity contract is at the heart of his Complaint, the Court will discuss his breach of contract claim before addressing his fraud and consumer protection act claims.[2]

■ In Count Six of his Complaint, Plaintiff alleges that the annuity contract "expressly and or impliedly guaranteed Plaintiff a 2.15% bonus enhancement, to be credited in the first year of issuance, that would permanently realize and gain the full benefit thereof." (D.E. # 1 ¶ 58). Plaintiff claims Defendant breached the contract "by proactively recouping the bonus enhancement and forcing Plaintiff to pay for his own bonus enhancement through an undisclosed 'self-financing' scheme." (*Id.* ¶ 58). To prevail on a breach of contract claim, a plaintiff must prove (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract. *ARC Lifemed, Inc. v. AMC–Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn.Ct.App.2005) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, 1998 WL 960287 (Tenn.Ct.App. Feb.

---

**2.** Plaintiff abandoned his remaining claims— breach of fiduciary duty, negligent and/or wanton hiring, training and supervision and conspiracy by not addressing these claims in Opposition to Defendant's Motion for Summary Judgment. (D.E. # 112). Nevertheless, for the reasons discussed throughout this memorandum, those claims are due to be dismissed as a matter of law.

2, 1998)). Defendant asserts that Plaintiff cannot establish the second and third elements.

### 1. AIG Annuity fully performed under the contract.

 Plaintiff's breach of contract theory is not a traditional theory involving a breach of a specific term within the four corners of the contract. Rather, Plaintiff claims that the partial disclosures regarding the "bonus" interest rate in the application and owner acknowledgment form created a "reasonable expectation" that the 2.15% "bonus" paid in year one would not be recouped in subsequent years through lower renewal crediting rates. (D.E. # 112 pp. 18–20). In analyzing a similar theory a court in the Middle District of Tennessee found that "the terms of this Policy are clear and unambiguous, and Plaintiff's asserted beliefs or assumptions cannot change those terms." *Thompson v. American General Life and Accident Ins. Co.*, 448 F.Supp.2d 885, 888 (M.D.Tenn. 2006). Similarly, Plaintiff's asserted beliefs and assumptions about how Defendant should have designed its annuities do not change the actual terms and conditions of the annuity in question in this case. *Cf. Phillips v. American International Group, Inc.*, 498 F.Supp.2d 690, 695 (S.D.N.Y. 2007) (holding "where the interest rates defendants paid in subsequent years complied with the express terms of the Annuity Contracts, those rates cannot be construed to breach any independent promise embedded in the word 'bonus' ").

The Contract documents set out the rates and terms of interest required under the Contract. (D.E. # 89–5, Ex. D p. 2). Defendant was obligated to credit Plaintiff's annuity 4.6% interest in year one, and at least 2.0% thereafter. (*Id.*) Defendant's records reflect, and Plaintiff does not dispute, that Defendant credited Plaintiff's annuity with 4.6% interest in year one, and with an annualized rate of 2.45% for the period of the second year before Plaintiff surrendered his annuity. Thus, Plaintiff received all of the interest to which he was contractually entitled and Plaintiff has failed to show that Defendant breached any term of the annuity contract.

### 2. Plaintiff Suffered No Damages.

 Plaintiff has also failed to produce substantial evidence that he has suffered damages. In determining damages in breach of contract actions, "the governing principle is to compensate for damages actually incurred 'by placing the plaintiff in the position he would have occupied had the contract been fulfilled in accordance with its terms.' " *Safeco Ins. Co. v. City of White House, Tennessee*, 133 F.Supp.2d 621, 630 (M.D.Tenn.2000) (quoting *Grantham and Mann, Inc. v. American Safety Prods., Inc.*, 831 F.2d 596, 601 (6th Cir. 1987)).

Plaintiff requested the full cash surrender value of the annuity less than eighteen (18) months after he purchased it. (D.E. # 89–5 Ex. A, p. 26). By cashing out his annuity so quickly after he purchased it, Plaintiff was entitled to receive only the value of the premiums he had paid, less any previous withdrawals he made from the annuity. (D.E. # 89–5 Ex. D, p. 6) Plaintiff does not dispute this provision of the annuity contract. (*Id.* at Ex. A pp. 114, 118:4–120:24). Plaintiff in fact received the entire $46,684.84 he had paid for the annuity. (*Id.* Ex. E, p. 26). Even giving Plaintiff every benefit of the doubt and assuming that he never withdrew any money before he surrendered his contract, he would not have been entitled to anything in excess of the $46,684.84 he deposited at the time he surrendered the contract. (*Id.* pp. 114:20–116:1). That is, pursuant to the terms of the annuity, because Plaintiff surrendered his annuity so

quickly, he received (and would only be entitled to receive) a refund of the premium—exactly what he received. Thus, Plaintiff has failed to create a question of fact with respect to damages, and he cannot establish a breach of contract claim.

## B. Misrepresentation

Counts One and Two of Plaintiff's Complaint assert claims for fraudulent misrepresentation and negligent misrepresentation, respectively. Plaintiff ascribes two representations to Defendant. First, Plaintiff asserts that Defendant represented to him "that the bonus enhancement annuity product was a better, superior, and more suitable investment for Plaintiff as compared to other investments." (D.E. # 1 p. 9). Second, Plaintiff claims that Defendant "expressly and/or impliedly guaranteed Plaintiff that the annuity had a bonus enhancement rate of 2.15%, to be credited in year one, and that Plaintiff would permanently realize and gain the full benefit of the bonus enhancement." (*Id.* ¶ 13). In the summary judgment briefing and at the hearing on Defendant's motion, the parties focused on this second alleged misrepresentation.[3] Nevertheless, the annuity documents contradict both theories.

## 1. No Misrepresentations Were Made to Plaintiff.

■ To maintain an action for misrepresentation (whether fraudulent or negligent), plaintiff must prove: (1) a misrepresentation with regard to a material fact, (2) knowledge of the falsity of the representation—that the representation was

made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) the misrepresentation relates to an existing or past fact, or if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise. *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn.Ct.App.1990). Similarly, a plaintiff asserting negligent misrepresentation "must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiff[ ] justifiably relied on the information." *Ingram v. Cendant Mobility Financial Corporation*, 215 S.W.3d 367, 371 (Tenn.Ct.App.2006); *see also Sears v. Gregory*, 146 S.W.3d 610, 621 (Tenn.Ct.App.2004). Plaintiff is unable to meet either misrepresentation standard.

■ Plaintiff alleges that Defendant misrepresented the terms of the Annuity in that the Company "expressly and/or impliedly guaranteed Plaintiff that the annuity had a bonus enhancement rate of 2.15%, to be credited in year one, and that Plaintiff would permanently realize and gain the full benefit of the bonus enhancement." (D.E. # 1 ¶¶ 29(b), 37(b)). As noted above, the Acknowledgement states that the bonus was to be credited only in the first year: "[t]he present effective an-

---

**3.** Although abandoned at some point during discovery, Plaintiff's first theory of misrepresentation was that an unidentified someone told him that the Annuity was a better and/or superior product to other investments. (D.E. # 1 ¶¶ 29(a), 37(a)). In his deposition, however, Plaintiff admitted that he never spoke to anyone at the insurance company about the

annuity. (D.E. # 89–5 Ex. A. p. 170.) Similarly, Plaintiff admitted that the bank employee who sold him the annuity—the one person with whom he did speak about the annuity before purchasing it—did not compare the annuity to any other contract or investment instrument. (*Id.* pp. 171:21–172:7).

nual interest rate on the initial premium payment is 4.60% and is guaranteed to be in effect for one year from the Policy Date. This rate includes a 2.15% enhancement to the current credited interest rate and is payable for the first twelve (12) months only." (D.E. # 89–5, Ex. B p. 2). Similarly, the Annuity Contract also clearly stated that the initial interest rate would be paid for only the first year. (D.E. # 89–5, Ex. D pp. 6–26). Finally, the application stated that the initial rate of 4.6% was guaranteed for one year. (D.E. # 89–5, Ex. C p. 4).

Therefore, Defendant disclosed to Plaintiff in three separate, written instruments that the initial enhancement rate would be in effect only for the first year. Plaintiff does not dispute that the 4.60% interest rate was credited to his annuity during the first year or that at least 2% annualized interest rate was applied to his annuity during that portion of the second year in which he held the annuity. (D.E. # 89–5, Ex. A, p. 119:23–24). Thus, it is clear that the very information Plaintiff claims was misrepresented was expressly provided to him in writing. *See Phillips,* 498 F.Supp.2d at 697 (dismissing the plaintiff's fraud claim and noting, "the disclosures in the Annuity Contracts at issue belie plaintiff's claim that those contracts contain any misrepresentation or omission").

### 2. There was no reliance, either reasonable or justifiable.

■ In light of these disclosures, Plaintiff could not have reasonably or justifiably relied on any oral misrepresentations to the contrary that he would "permanently realize and gain the full benefit of the bonus enhancement." (D.E. # 1 ¶ 29(b)). In *Shoney's Inc. v. Jim Morris,* 100 F.Supp.2d 769, 778 n. 15 (M.D.Tenn.1999) ("*Shoney's*"), the court explained that "[a] party cannot reasonably rely upon allegedly fraudulent promises which are directly

contradicted by the terms of ... a subsequently executed contract." *Id.* (quoting *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 829 (D.Minn.1989)). Further, that court noted that "[i]n the absence of some factor which would justify plaintiff's reliance on oral representations which are expressly contradicted in the writings, plaintiffs could not justifiably rely on the alleged misrepresentations without further inquiry." *Shoney's,* 100 F.Supp.2d at 778 n. 15 (quoting *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 829 (D.Minn.1989)); *see also Ingram,* 215 S.W.3d at 372 (noting that where the written contract "does not contain any of the representations allegedly" made by the defendants "the contractual language ... negates the reliance element of both fraudulent and negligent misrepresentation").

The Acknowledgement and annuity contract clearly set forth what interest rates would be credited at certain times. Because Plaintiff's claims of oral misrepresentation squarely contradict the terms of the application, annuity contract and Acknowledgement, any purported reliance on alleged oral misrepresentations is neither reasonable nor justifiable.

The Northern District of Alabama rendered an opinion directly on point. *See Sayer v. Lincoln Nat'l Life Ins. Co.,* 2006 WL 6253201, 2006 U.S. Dist. LEXIS 96126 (N.D.Ala.2006) ("*Sayer*"). In the *Sayer* case, the plaintiff's complaint was similar to that in the instant case—her complaint was founded on allegations that she was defrauded in her purchase of a so-called bonus annuity and that the annuity contract was breached. There, the court granted defendant's motion for summary judgment as to all of plaintiff's claims. *Id.* at *1, 2006 U.S. Dist. LEXIS 96126 at *1. Although the *Sayer* court applied Alabama law, it embraced the principle of Tennessee law articulated above—there could be

no reasonable reliance on alleged oral representations contrary to the terms of a written agreement when the plaintiff had the opportunity to read the contract at issue. (*Id.* at *8, 2006 U.S. Dist. LEXIS 96126 at *29) (explaining that "if Plaintiff is claiming a misrepresentation as to the contents of the [Acknowledgement], as well as the Annuity contract itself, her ability and opportunity to read and verify the contents of both documents, as well as her subsequent adoption of them, precludes a colorable fraud claim"); *see also Delaney v. American Express Co.*, 2007 WL 1420766 at *6 (D.C.N.J.2007) (noting that the plaintiffs had the "obligation to examine the Annuity Documents to protect themselves" and holding that the plaintiffs "cannot establish reasonable reliance on any alleged omissions or oral representations by Defendants' agents that contradicted Defendants' written statements").

Accordingly, Plaintiff's purported reliance on any alleged oral misrepresentations was neither reasonable nor justifiable. As such, Plaintiff has failed to create an issue of material fact with respect to his misrepresentation claims.

### 3. Plaintiff has suffered no damages.

Plaintiff's misrepresentation claims fail for the additional reason that he suffered no damages. As pointed out above, Plaintiff cashed out his annuity less than eighteen months after purchasing it. Because he cashed out at a time when even if the interest rates Plaintiff suggests should have been applied to the annuity had been applied, all Plaintiff was entitled to was the return of his premium—the very amount he received. (D.E. # 89-5, Ex. D p. 6). Thus, Plaintiff cannot establish the fourth element of his misrepresentation claims.

### C. Fraudulent Concealment or Failure to Disclose.

 In his fraudulent concealment claim (Count Three), Plaintiff alleges that "the Defendants proactively designed the annuity with undisclosed penalties, costs and/or charges in order to recoup and recapture, for the Defendants, any and all bonus enhancement [sic] credited to the Plaintiff." (D.E. # 1 ¶ 45). Plaintiff's concealment claim asserts that Defendant concealed its internal design and pricing methodologies for the annuity. To prevail on this concealment claim, Plaintiff must prove the following four elements "(1) that the defendant had a duty to disclose, (2) that the defendant failed to disclose, (3) that the plaintiff reasonably relied on the misrepresentation, and (4) that the plaintiff suffered injury as a result." *Bradberry v. John Hancock Mutual Life Ins. Co.*, 222 F.R.D. 568, 571 (W.D.Tenn.2004) (citing *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn.1998)). Essentially, " '[t]he tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury.' " *Id.* (quoting *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn.1998)). Because the law does not require an insurance company to disclose its internal product design considerations, Plaintiff's fraudulent concealment claim is due to be denied as a matter of law.

### 1. Defendant owed Plaintiff no duty to disclose its internal pricing information.

 Plaintiff asserts that Defendant fraudulently concealed that it would "recoup" the enhancement to the first year interest rate. (D.E. # 1 ¶ 45). Although Tennessee cases hold that an insurer has a duty to disclose material facts to the insured, *see e.g., Domestic Sewing Mach. Co.*, 83 Tenn. 418, *3 (Tenn.1885), Tennes-

see law does not require an insurer to disclose its internal interest rate or profit making procedures.

In *Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc.*, 160 S.W.3d 874 (Tenn.Ct.App.2005) (*"Beaudreau"*), the plaintiffs alleged that the defendant automobile dealership violated the Tennessee Consumer Protection Act and engaged in civil conspiracy with respect to its practice of receiving a "dealer reserve." Specifically, in *Beaudreau*, the financing company quoted a certain interest rate to the dealership, the dealership added the "dealer reserve," and then the dealership quoted to the plaintiff an interest rate reflecting the sum of the financing company's interest rate and the dealer reserve. The plaintiff argued that defendant had the duty to disclose the interest rate quoted by the financing company. That is, plaintiff contended that the dealership must disclose its internal interest rate making procedures. *Id.* at 877.

The Tennessee Court of Appeals flatly rejected this contention. *Id.* In so doing, the *Beaudreau* court expressly adopted the rationale of the Alabama Supreme Court in *Ex parte Ford Motor Credit Co.*, 717 So.2d 781 (Ala.1997) (*"Ford"*), where that court stated

> We decline to recognize a common law duty that would require the seller of a good or service, absent special circumstances, to reveal to its purchaser a detailed breakdown of how the seller derived the sales price of the good or service, including the amount of profit to be earned on the sale.

*Ford*, 717 So.2d at 787. Similarly, in *Sayer*, the Northern District of Alabama

cited the *Ford* case, *inter alia*, as precedent standing for the proposition that "Defendant had no duty to disclose its pricing structure to Plaintiff upon her purchase of the Annuity." *Sayer*, 2006 WL 6253201 at *4, 2006 U.S. Dist. LEXIS 96126 at *14.[4]

The Court finds that Defendant had no duty to disclose its internal ratemaking and pricing procedures related to the annuity. Plaintiff's fraudulent concealment claim, therefore, fails as a matter of law.

**2. Plaintiff has suffered no damages.**

Like his misrepresentation and breach of contract claims, Plaintiff must prove damages to succeed on his fraudulent concealment claim. As set forth above, however, Plaintiff has suffered no damages because he cashed out the annuity at a time when the most he could have received and what he actually received was a refund of the full premium he had paid. Absent any damage, Plaintiff cannot establish his concealment claim. *Chrisman*, 978 S.W.2d at 538–39.

**D. Tennessee Consumer Protection Act.**

▇▇▇ In Count Nine, Plaintiff alleges that Defendant's purported practice "of fraudulently representing and/or fraudulently concealing material facts to sell their products and breaching their own contract is unfair and deceptive." (D.E. # 1 ¶ 72). Plaintiff's claim under the Tennessee Consumer Protection Act (the "TCPA") fails because Defendant did not engage in any unfair or deceptive acts.

To recover under the TCPA, Plaintiff must prove "(1) that the defendant engaged in an unfair or deceptive act or

---

4. *See also Phillips*, 498 F.Supp.2d at 699 (dismissing the plaintiff's claims and noting that the insurer's "alleged failure to disclose that the interest rates after year one would be set so as to recoup the 'bonus' is not misleading in a material way under [New York law] where the Annuity Contracts expressly stated that defendants retained the right to set interest rates in those subsequent years, subject to guaranteed minimum").

practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal or mixed, or any other article, commodity, or thing of value wherever situated.'" *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn.Ct. App.2005) (quoting Tenn.Code Ann. § 47–18–109(a)(1)).[5] Plaintiff has failed to prove either requirement.

In *Beaudreau, supra,* the plaintiff brought a claim against the defendant under the TCPA. In holding that the defendant had no duty to disclose its internal interest rate or profit making procedures, the court held that the defendant did not engage in any unfair or deceptive act. *Beaudreau*, 160 S.W.3d at 881. Once again, the *Beaudreau* court's rationale applies here.

As explained above, the contract documents expressly set forth the very information that Plaintiff claims was misrepresented or suppressed from him. That is, the amounts of interest to be credited, and the time period which interest will be credited, were both set forth in the Contract Documents provided to Plaintiff at the time of the sale of the annuity. Plaintiff does not dispute that he received exactly the interest rates and financial return that he was promised under the annuity. Further, the fact that Defendant changed its disclosures for annuities purchased after Plaintiff purchased his product, which notes that expenses may be higher and renewal interest rates may be lower on annuities that contain a "bonus" versus ones that do not contain a bonus (cite), this change does nothing to show Defendant engaged in any unfair or deceptive act.[6] Further, as noted above, Plaintiff has suffered no damages—an essential element of a claim under the TCPA. Accordingly, Plaintiff's TCPA claim fails.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (D.E. # 87) is due to be granted. The pending motion for class certification (D.E. # 78), motion to compel (D.E. # 81), motion to grant motion to compel (D.E. # 100), are moot.

---

5. Tenn.Code Ann. § 47–18–109(a)(1) provides, in full.

[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may

bring an action individually to recover actual damages.

6. Defendant also noted in its reply brief that the Pennsylvania Department of Insurance required this additional disclosure for all annuities sold within the Commonwealth of Pennsylvania. (D.E. # 116–2 p. 8). No such disclosure was required in Tennessee at the time of purchase.