**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARY HELEN ELLER, *Plaintiff*, and PAUL HARRINGTON, individually and on behalf of all others similarly situated, *Plaintiff-Appellant*, v. EQUITRUST LIFE INSURANCE COMPANY, *Defendant-Appellee*. | No. 12-17119 D.C. No. 4:09-cv-00029-DCB |

MARY HELEN ELLER,
*Plaintiff*,

and

PAUL HARRINGTON, individually and
on behalf of all others similarly
situated,
*Plaintiff-Appellee*,

v.

EQUITRUST LIFE INSURANCE
COMPANY,
*Defendant-Appellant*.

No. 12-17267

D.C. No.
4:09-cv-00029-
DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
December 11, 2014—San Francisco, California

Filed February 24, 2015

Before: Diarmuid F. O'Scannlain, Raymond C. Fisher,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY*

### RICO

The panel affirmed the district court's summary judgment and vacated its denial of costs in a putative class action alleging violations of federal and state law in the sale of annuities.

Affirming the district court's grant of summary judgment in favor of the defendant on a RICO claim, the panel held that the plaintiff failed to establish any actionable predicate acts in alleged fraudulent schemes concerning the promise of premium bonuses, the application of the annuity's market value adjustment, or the circumvention of state nonforfeiture laws. The panel also affirmed the district court's summary judgment on state-law claims.

Vacating the unexplained denial of costs, the panel remanded to allow the district court either to award costs or to state its reasons for denying them.

### COUNSEL

Steve W. Berman (argued), Hagens Berman Sobol Shapiro LLP, Seattle, Washington; Elaine T. Byszewski, Hagens Berman Sobol Shapiro LLP, Pasadena, California, for Plaintiff-Appellant.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Margaret A. Grignon (argued), Robert D. Phillips, Jr., Brandon W. Corbridge, Reed Smith LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

HURWITZ, Circuit Judge:

## I.  Introduction

This is a putative class action against EquiTrust Life Insurance Company ("EquiTrust"), alleging violations of federal and state law in the sale of annuities.  The district court granted EquiTrust's motion for summary judgment, but, without explanation, declined to award costs to the prevailing party.  We affirm the summary judgment, but vacate the denial of costs and remand for the district court either to award costs or explain its refusal.

## II.  Facts

### A.  The Annuity

In 2007, Paul Harrington purchased an EquiTrust MarketPower Bonus Index Annuity (the "Annuity") from an insurance agency.  The Annuity uses "index accounts" to generate "index credits" that increase the Annuity's accumulation value (the total amount in the account).  Index credits (essentially interest) are calculated based on periodic

changes in the closing value of the S&P 500.[1]  EquiTrust has the express discretion to choose the amount of index credits awarded (the "index cap"), but the Annuity guarantees a minimum cap.

The Annuity permits annual withdrawals of up to 10% of the accumulation value with no penalty.  Larger withdrawals are subject to: (1) a surrender charge, a specified percentage of the accumulation value that decreases each year until it disappears in the fourteenth year; and (2) a market value adjustment, which increases or decreases the accumulation value based on interest rates in the market.[2]  After his 105th birthday, the annuitant can opt to receive the accumulation value incrementally for a specified period without any surrender charges or market value adjustments.  When the annuitant dies, the full accumulation value is available to beneficiaries.

Harrington's initial premium was $432,530.92.  The Annuity included a "10% premium bonus," under which EquiTrust added to the accumulation value a sum equal to 10% of the premiums paid during the first year.  The

---

[1] Harrington had two index accounts.  For the 1-year Average Cap Index Account, index credits are based on a comparison of the percentage change in the S&P 500 from the previous Annuity contract anniversary date to the daily average of the S&P 500 over the intervening year.  For the 2-year Average Cap Index Account, the comparison is to the monthly average over the two-year period between Annuity Anniversaries.

[2] A full surrender receives the cash surrender value, which is the greater of (a) the accumulation value less the penalties discussed above; or (b) the minimum guaranteed contract value, which is "87.5% of Premium Paid (excluding any Premium Bonus), less any partial withdrawals, plus interest earned at a rate no lower than 1% and no higher than 3%."

accumulation value of Harrington's account was thus immediately increased by 10% ($43,253.10).[3]

## B.  Procedural Background

In 2009, Harrington filed this putative class action in the District of Arizona, alleging that EquiTrust's marketing of the Annuity violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), and Arizona law.  Harrington later filed a motion for class certification, and EquiTrust filed a motion for summary judgment.  The district court granted EquiTrust's motion, denied class certification as moot, and entered judgment for the defendant.  The court, however, declined without explanation to award costs to the prevailing party.  Harrington timely appealed the judgment, and EquiTrust timely appealed the denial of costs.

## III.  Discussion

A RICO claim requires "racketeering activity (known as predicate acts)." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)) (internal quotation marks omitted).  The racketeering activities alleged by Harrington were violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  *See* 18 U.S.C. § 1961(1) (identifying violations of these statutes as racketeering activity).

Mail and wire fraud can be premised on either a non-disclosure or an affirmative misrepresentation.  *See United*

---

[3] Harrington later withdrew $43,253 without penalty.

*States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986). A non-disclosure, however, can support a fraud charge only "when there exists an independent duty that has been breached by the person so charged." *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) (citing *Dowling*, 739 F.2d at 1449).

Harrington's complaint is based entirely on the language of the Annuity contract and the EquiTrust marketing materials; he makes no claim of misrepresentation by the insurance agency that sold him the Annuity. Harrington alleges three fraudulent schemes: (1) the promise of premium bonuses; (2) the application of the Annuity's market value adjustment; and (3) the circumvention of state nonforfeiture laws. The district court found no actionable predicate acts, and we agree.

## A. The Premium Bonus

Harrington claims that the promise in the Annuity of a "10% premium bonus" was fraudulent because EquiTrust failed to disclose that it does not invest any additional money in the market when crediting the bonus to an annuitant's account, and eventually "recoups" the bonus by crediting lower index credits to the Annuity than it might have in an annuity contract without the bonus feature. Harrington also argues that the "10% bonus" is illusory, because the ultimate increase over time in the accumulation value from the bonus

might be less than increases that would occur for an annuity which provided higher returns.

We begin from the settled premise that a seller generally has no duty to disclose internal pricing policies or its method for valuing what it sells.  Thus, in *Thorman v. American Seafoods Co.*, we held that there was no fraudulent concealment by a fishing company that did not disclose its methodology for determining wages because, in the absence of a fiduciary relationship or a statutory duty, the company's "silence or passive conduct does not constitute fraudulent concealment."  421 F.3d 1090, 1095 (9th Cir. 2005) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987)).  Courts in other circuits agree.  *See, e.g.*, *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1313–14 (11th Cir. 2000) ("As a general matter of federal law, retailers are under no obligation to disclose their pricing structure to consumers."); *Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 71 (1st Cir. 1998); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished).

Harrington does not allege that EquiTrust was a fiduciary or that some statute required the disclosure of its internal pricing policies.  In the absence of such a relationship, there is no duty to disclose that the Annuity may provide lower index credits than might have been available in an alternative product without the bonus feature.  *See Cal. Architectural*, 818 F.2d at 1472.[4]

---

[4] A number of district courts have reached the same conclusion in evaluating comparable annuities. *See, e.g.*, *Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C 07–0371 CW, 2010 WL 4123994, at *11–13 (N.D. Cal. Oct. 6, 2010); *Cirzoveto v. AIG Annuity Ins. Co.*, 625 F. Supp. 2d 623,

Of course, even absent a duty to disclose, a seller can be liable for affirmatively misrepresenting its product. *See Lustiger v. United States*, 386 F.2d 132, 136 (9th Cir. 1967); *see also Benny*, 786 F.2d at 1418. Thus, if an annuity company promises a bonus, but does not deliver as advertised, there can be actionable misrepresentation.[5]

But it is uncontested here that EquiTrust delivered precisely what it promised. The 10% bonus was accurately described in the Annuity materials and properly credited to Harrington's account. The bonus increased Harrington's accumulation value without requiring him to deposit additional funds, allowing him to withdraw more money without penalty than otherwise would have been possible. The promise of a "bonus" was thus not, as Harrington claims, illusory. *See Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C 07–0371 CW, 2010 WL 4123994, at *11 (N.D. Cal. Oct. 6, 2010) (finding that added liquidity is a bonus). Nor is it clear that Harrington would have been better off absent the bonus feature. If the index credits were regularly low, Harrington's investment would outperform a non-bonus annuity that

---

628–31 (W.D. Tenn. 2009); *Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690, 696–98 (S.D.N.Y. 2007); *Delaney v. Am. Express Co.*, Civ. No. 06–5134 (JAP), 2007 WL 1420766, at *5–6 (D.N.J. May 11, 2007); *Sayer v. Lincoln Nat'l Life Ins. Co.*, No. 7:05–CV–1423–RDP, 2006 WL 6253201, at *7–10 (N.D. Ala. Oct. 12, 2006).

[5] *See, e.g.*, *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, No. 05cv1018 AJB (WVG), 2012 WL 440820, at *4–5 (S.D. Cal. Feb. 10, 2012); *Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV 05–6838 CAS (MANx), CV 05–8908 CAS (MANx), 2011 WL 4852314, at *11–14 (C.D. Cal. Oct. 13, 2011); *Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2008 WL 8929013, at *9–12, *14–16 (S.D. Cal. July 8, 2008).

provided the possibility of higher credits.[6]  The district court thus correctly concluded that use of the term "bonus" was not fraudulent. *Compare, e.g.*, *Cirzoveto v. AIG Annuity Ins. Co.*, 625 F. Supp. 2d 623, 627 (W.D. Tenn. 2009) (finding no breach of contract for a "bonus" annuity that offered, and provided, an increased rate of interest in the first year), *with Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2008 WL 8929013, at *11 (S.D. Cal. July 8, 2008) (finding actionable an affirmative misrepresentation about an "immediate" bonus that was not available for years).

## B.  The Market Value Adjustment

The Annuity includes a market value adjustment ("MVA"), a "positive or negative adjustment that may apply to [an annuity's accumulation] value upon early withdrawal or surrender, based on the movement in an external index." The MVA takes account of the capital gains or losses resulting from the sale of securities needed to fund early withdrawal or surrender requests.  EquiTrust's brochure provides the precise formula used to calculate the MVA, explains how to determine the variables in the formula, and offers examples of its application.[7]

Harrington alleges that the brochure fails to explain that the disclosed constant in the formula, which he refers to as a

---

[6] In addition, because the bonus feature in the Annuity locks in value immediately, it may increase the amount paid to an annuitant's beneficiaries more than would an alternative annuity.

[7] The formula is: $[(1+s)/(1+c+.005)]^{n/12}-1$, where $s$ is the treasury rate when the annuity was purchased, $c$ is the treasury rate when the annuity is surrendered, and $n$ is the number of months until the end of the fourteen-year surrender-charge period.

"bias,"[8] serves to decrease upward adjustments and increase downward ones.  Harrington claims that this omission is fraudulent because the bias contradicts what he characterizes as the "stated purpose" of the MVA, increasing the accumulation value when interest rates are lower and decreasing it when interest rates are higher.

The district court correctly rejected this argument. EquiTrust meticulously explains the MVA and provides examples of how it operates in various circumstances.  *See Kennedy*, 2010 WL 4123994, at \*10 ("Plaintiff complains that Defendant defined the other variables in the MVA/EIA formula, but failed to explain the 0.005 value. This is not fraud.").    More importantly, even if we assume that Harrington correctly divines the MVA's implicit purpose, the bias does not violate it.  Even with the bias, the MVA raises the accumulation value if interest rates decline and decreases it when they rise.  To be sure, the increase is less and the decrease greater than it would be without the bias, but EquiTrust never promised anything different.

## C.  The Nonforfeiture Law

The model standard nonforfeiture law for individual deferred annuities ("SNFLIDA"), codified at Ariz. Rev. Stat. § 20-1232, has specific regulations for annuities with optional maturity dates.  *See id.* § 20-1232(G).  Whether a maturity date is optional or fixed is determined by the contract terms. *See id.*

The terms in the Annuity do not comply with SNFLIDA. The Annuity contract, however, has an explicit fixed maturity

---

[8] The "bias" is the .005 in the formula.

date. Nonetheless, Harrington argues that the Annuity effectively has an optional maturity date because EquiTrust's internal policy is to consider affording annuitants relief from the fixed-date terms of their contracts upon request. Harrington argues that the Annuity therefore violates SNFLIDA, and is an attempt by EquiTrust to defraud Arizona regulators.

The district court correctly rejected this claim. Harrington offers no authority for the proposition that an insurer's willingness to consider providing relief on a case-by-case basis to its annuitants from the fixed-term provisions of an annuity contract mutates the annuity into one with an optional maturity date; indeed, because the internal policy is only invoked at the annuitant's request, we can perceive no reason to so conclude. More significantly, Harrington has no conceivable injury from the internal policy, as the potential of relief from the Annuity's fixed maturity date can only add value to his annuity. *See* 18 U.S.C. § 1964(c) (requiring injury for civil RICO recovery).[9]

---

[9] Because we affirm the district court's summary judgment on Harrington's claims and he was the only putative class representative, we do not address claims based on the other annuities described in the complaint. The complaint also alleged violations of Arizona consumer fraud laws, *see* Ariz. Rev. Stat. §§ 44-1521 to -1534; *id.* §§ 20-441 to -469.01, and common law unjust enrichment. The state law fraud claims were predicated on the same allegations that underlie the RICO claim, and fail for the same reasons. The unjust enrichment claim also fails; it is based on the erroneous theory that the Annuity promised, but did not actually deliver, a bonus.

## IV.  EquiTrust's Appeal

EquiTrust argues that the district court erred by not awarding it costs as the prevailing party pursuant to Federal Rule of Civil Procedure 54(d).  Although a district court has the discretion to decline to award costs to a prevailing party, it must explain a denial.  *See Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 591–93 (9th Cir. 2000) (en banc).  The court here did not do so.  Thus, we vacate the order denying costs and remand to allow the district court either to award costs or state its reasons for denying them.  *See Quan v. Computer Scis. Corp.*, 623 F.3d 870, 889 (9th Cir. 2010), *abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014).

## V.  Conclusion

We **AFFIRM** the district court's grant of summary judgment, **VACATE** the order denying costs to EquiTrust, and **REMAND** to allow the district court to address the issue of costs.