IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2025 Session

## CCD OLDSMITH HENRY, LLC, ET AL. V. TOWN OF NOLENSVILLE

**Appeal from the Circuit Court for Williamson County**
**No. 24CV-45    Deanna B. Johnson, Judge**

_____

### No. M2024-01102-COA-R3-CV

_____

This appeal concerns individual liability in the context of a limited liability company. John Olderman ("Olderman") and Christopher Smith ("Smith") are manager members of CCD Oldsmith Henry, LLC, and Oldsmith Group, LLC ("Oldsmith," collectively). Oldsmith asked the Town of Nolensville ("the Town") to rezone certain property so it could develop residential units on the property. This development would increase traffic at a nearby intersection. At a hearing before the Nolensville Board of Mayor and Aldermen ("the BOMA"), Smith said that Oldsmith could help pay to improve the intersection. The Town subsequently rezoned the property. Oldsmith later declined to pay what the Town said it owed, asserting it never agreed to pay so much. In response, the Town refused to issue building permits. Oldsmith sued the Town in the Circuit Court for Williamson County ("the Trial Court"). The Town filed a counterclaim and a motion to join Smith and Olderman. The Town alleged that Smith and Olderman fraudulently and negligently misrepresented what Oldsmith was willing to pay. The Trial Court denied the motion, ruling that the Town could obtain complete relief without Smith and Olderman. The Trial Court also ruled that Smith and Olderman could not be held individually liable based on these allegations. The Town appeals. We hold that the Town alleged nothing actionable against Olderman; that the Town sufficiently alleged promissory fraud against Smith; that Smith's status as manager member of an LLC does not insulate him from liability for his own acts or omissions; and that the Trial Court's denial of joinder as to Smith was an abuse of discretion. We affirm the denial of joinder as to Olderman. Otherwise, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Charles Michels, Nashville, Tennessee, for the appellant, the Town of Nolensville.

Thomas V. White, Nashville, Tennessee, for the appellees, John Olderman, Christopher Smith, CCD Oldsmith Henry, LLC, and Oldsmith Group, LLC.

## OPINION

## <u>Background</u>

In January 2019, the BOMA held a hearing at which it considered Oldsmith's rezoning request. Smith and Olderman attended the hearing. The Town was concerned about the prospect of increased traffic at an intersection near the property at issue. Smith said that Oldsmith could assist on this front by helping to pay for improvements to the intersection. Smith made the remarks in controversy; Olderman was simply there. We set out some of the pertinent exchanges from the hearing as follows:

> MAYOR ALEXANDER: Well, I can say I basically like the plan. And I like it even more now that we're going to get a trail through Silver Stream. That's terrific. I think we've worked at this enough to come up with a very good plan, and I like it very much.
> To me, solving the traffic issues is probably where we -- in order to get going, I think we need to somehow have some kind of answer to the traffic problem.
> What would be your solution?
> MR. SMITH: You know, like I said before, we're not a body that could go out and build on an intersection or take right-of-way that's needed. We are -- can be a body that can be a contributor to that. So if -- whatever TDOT is contributing, we can contribute the difference. The four-way stop was our --
> MR. PATRICK [Vice Mayor]: Temporary measure.
> MR. SMITH: -- temporary -- we were trying to do something now.

> ***

> MAYOR ALEXANDER: I -- if I might, I've heard that you have a contract that would expire before next month's meeting.
> MR. SMITH: Yes, sir. I mean, y'all have worked with me before, and our goal is to come in here and work as a body. We've deferred this a number of times to try to find some issues on the intersection improvements. We -- we've made some headway. I mean, from a governmental standpoint, we've

-2-

made some real headway there. And that's why we were feeling, you know, confident that we could resolve them here.

And maybe it might be easier for me to come in and say, I'm hearing your concerns tonight, and let me maybe address them and see if that allays that rather than deferring this again, because there's some things, as an owner, I can do that are maybe over and above what a traffic study or something else could do.

The first issue, the overarching issue or the -- let's talk about turn lanes first of all.

\*\*\*

MAYOR ALEXANDER: Well, I think we could require them -- this developer at maybe 50 percent bailout to pay whatever the cost between the State and the actual cost --

MR. PATRICK: Well, that means we're committing them to $283,000. Am I right on that?

MR. SMITH: If the total is -- yeah, subtotal -- the total is 575.

MR. PATRICK: This will be -- let's be -- of course, that's putting in contingency, but we know how that goes. Now, 288. What did I say, 283? 288.

MAYOR ALEXANDER: And I think the 50 percent build-out would be homes occupied.

MR. SMITH: And would that be a contribution, right? Not an actual us improving it?

MR. NOTESTINE [City Attorney]: I don't think they would -- they wouldn't be the --

MR. PATRICK: They wouldn't -- no, they wouldn't be the contractor.

MAYOR ALEXANDER: No.

\*\*\*

MR. PATRICK: I was -- what I was trying to -- what I was suggesting was that they are saying they're committed to an extent, assuming that there's going to be partnership in this from TDOT.

Do you feel like you're working your way down the road towards that?

MR. SMITH: We are, in conjunction with the town. I mean, we would like to be a participant in the -- having the solution.

MR. PATRICK: Right.

MR. SMITH: We just don't -- would like to know that we're not the only solution.

In the end, the BOMA approved Oldsmith's rezoning request. The BOMA limited Oldsmith's contribution to no more than 50% of the costs.

The Town later presented Oldsmith with a bill for $688,030. Oldsmith rejected this figure as exceeding what it agreed to pay and so declined to pay that amount. The Town subsequently refused to issue building permits for Oldsmith. In January 2024, Oldsmith sued the Town in the Trial Court, seeking issuance of the permits. The Trial Court granted Oldsmith injunctive relief, ordering the Town to issue the permits. The record on appeal contains an affidavit by Olderman in which he states that Oldsmith never intended to pay more than 12% of the project's costs. For its part, the Town filed an answer and counterclaim against Oldsmith, as well as a motion to join Smith and Olderman individually as counter-defendants. The Town alleged that Smith and Olderman fraudulently and negligently misrepresented what Oldsmith was willing to pay. In its counterclaim, the Town alleged, in part:

54. Smith, on behalf of Counter-Defendants, represented to the Board that whatever TDOT contributed to the Traffic Improvements, Counter-Defendants would contribute the difference.
55. Olderman[1], who was at the Board meeting on behalf of Counter-Defendants, asserts that Counter-Defendants never advised the Town that Counter-Defendants would pay more than their "proportionate share" of the Traffic Improvements, specifically 12%.
56. The Board approved rezoning the Development, on the condition that Counter-Defendants pay no more than 50% of the costs of the Intersection Improvements based upon an updated engineer's estimate of the costs at either: 1) 50% of buildout of the development; or 2) when TDOT commences work on the Intersection Improvements.
57. Counter-Defendants therefore made a representation of an existing fact, that Counter-Defendants would contribute the difference between the cost of the Traffic Improvements and whatever TDOT contributes in order to obtain rezoning and the right to build up to 314 residential homes, rather than 104.
58. Counter-Defendants' representation was false when made, as Olderman swore under oath that Counter-Defendants never intended that Defendants would pay more than their proportionate share, 12%, of the Traffic Improvements.
59. Counter-Defendants' representation was in regard to a material fact, as the Board indicated during the meeting that the biggest concern with

---

[1] Olderman attended the meeting but never attempted to modify the statement by Chris Smith that Counter-Defendants would contribute the difference between the total cost of the Traffic Improvements and what TDOT contributes[.]

Counter-Defendants' Development was the traffic, and, as Smith states, he heard the Board's concerns regarding traffic, and wanted to address those concerns ". . . because there's some things, as an owner, I can do that are maybe over and above what a traffic study or something else could do."

60. Counter-Defendants' false representation was made either knowingly or without belief in its truth or was made recklessly, in that Smith clearly advised the Board that Counter-Defendants would contribute the difference between the total cost of the Traffic Improvements and what TDOT contributes, that Counter-Defendants current share of ½ of the Traffic Improvements was roughly $283,000, and that Counter-Defendants were offering to provide more than what a traffic study can require, both of which are inapposite with Counter-Defendants' assertion that Counter-Defendants' never intended to pay more than their proportionate share of 12%.

61. The Board reasonably relied on Counter-Defendants' false representation by approving Ordinance 18-08 despite substantial concerns regarding the traffic, conditioning approval on Counter-Defendants paying up to 50% of the costs of the Traffic Improvements, which Counter-Defendants went along with despite apparently, per Olderman's statement, Counter-Defendants' intent to pay no more than 12% of the cost of the Traffic Improvements.

62. The Town suffered damages as a result of the misrepresentation, in that Counter-Defendants attempted to pay the Town $606,000 less than what is owed in immediate funds, or $516,000 less than what is owed at an undetermined later date. Because Counter-Defendants have not paid the $688,030, the citizens of the Town are required to bear the burden of Counter-Defendants' misrepresentation to the Board.

63. The Town is therefore entitled to a judgment in the amount of $688,030, plus interest and costs.

64. The Town is further entitled to punitive damages, as there is clear evidence that Counter-Defendants fraudulently or recklessly obtained a rezoning of their Development by misrepresenting to the Town that Counter-Defendants would pay whatever portion of the Traffic Improvements were not paid by TDOT when, at the time of Counter-Defendants' statement to the Board, Counter-Defendants intended to contribute, at most, 12% of the costs of the Traffic Improvements.

(Citations and some footnotes omitted, footnote renumbered).

In June 2024, the Trial Court heard the Town's motion to join Smith and Olderman as counter-defendants. In July 2024, the Trial Court entered an order denying the Town's motion. In its order, the Trial Court stated:

This cause came to be heard on the 17th day of June 2024, upon the Motion by the Town of Nolensville for joinder, pursuant to Rules 13 and 20 of the Tennessee Rules of Civil Procedure, of John Olderman and Christopher Smith in their individual capacities as defendants in this matter.

The Court has reviewed the Motion, the Response, and the Reply in this matter. Upon consideration of those documents, and oral argument in open court, the Court is of the opinion that said Motion should be denied.

The Court specifically finds that complete relief may be granted in this matter, with parties presently before the Court and that there is no need to include John Olderman and Christopher Smith individually as defendants in this matter.

The Court is also of the opinion that pursuant to Tennessee Code Annotated § 48-249-114(A)(1) that John Olderman and Christopher Smith are manager members of LLCs presently before the Court and that the issues and allegations in the proposed counterclaim are the responsibilities of the respective LLCs, and that there is no personal obligation by John Olderman and Christopher Smith for the alleged actions which are the subject of the proposed counterclaim.

At the request for the Town of Nolensville and because this Order resolves all claims asserted against Mr. Olderman and Mr. Smith in their individual capacities, the Court's Order on this matter qualifies for certification as a final judgment pursuant to Tenn. R. Civ. P. 54.02. The Court makes an express determination that there is no just reason for delay of the entry of this Order as a final judgment as to all claims asserted against Mr. Olderman and Mr. Smith in their personal capacities in this matter. The Court expressly directs that this Order be entered as a final judgment pursuant to Tenn. R. Civ. P. 54.02.

The Town timely appealed to this Court.

### Discussion

The Town raises three issues on appeal, which we restate and reorder as follows: 1) whether the Town sufficiently alleged fraudulent or negligent representation against Smith and Olderman; 2) whether the Trial Court erred in finding that Smith and Olderman were immune from liability for tort claims arising out of actions taken by them on behalf of Oldsmith; and 3) whether the Trial Court abused its discretion in declining to add Smith and Olderman as parties.

As an initial matter, we address the applicable standard of review. In its brief, Oldsmith asserts that the standard of review is abuse of discretion. The Town argues that, insofar as the Trial Court ruled on the sufficiency of its claims, the standard of review is *de novo* without a presumption of correctness. Oldsmith disputes this, saying "the Trial Court made no ruling on the legal sufficiency of Nolensville's counterclaims." However, we do not find that to be the case. The Trial Court found that "the issues and allegations in the proposed counterclaim are the responsibilities of the respective LLCs, and that there is no personal obligation by John Olderman and Christopher Smith for the alleged actions which are the subject of the proposed counterclaim." This finding implicates the sufficiency of the Town's counterclaims. Oldsmith appears to acknowledge as much in its brief because it identifies as an issue and argues that the Town's allegations failed to establish fraudulent or negligent misrepresentation. Therefore, to the extent the issues on appeal concern the sufficiency of the Town's counterclaims, we apply the standard of review for a motion to dismiss. *See Robinson v. City of Clarksville*, 673 S.W.3d 556, 579-80 (Tenn. Ct. App. 2023). Our review is *de novo* without a presumption of correctness, and we examine the legal sufficiency of the Town's claims rather than the strength of its proof. *Id*. at 566.

Regarding the Town's motion to join Smith and Olderman, the Town filed its motion pursuant to Rules 13 and 20 of the Tennessee Rules of Civil Procedure. On this issue, we review the Trial Court's decision under the abuse of discretion standard. *See Brown v. McMullin*, No. 01A01-9710-CH-00561, 1998 WL 639108, at *4 (Tenn. Ct. App. Sept. 14, 1998), *no appl. perm. appeal filed* ("[W]hether to add the bank as a party to this action was a decision resting within the discretion of the trial judge. The bank was not a necessary party in this action, Rule 19, Tenn. R. Civ. Pro., and the permissive joinder of a party is subject to the trial judge's authority to 'make other orders to prevent delay or prejudice.' Rule 20.02, Tenn. R. Civ. Pro.").

In *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Tennessee Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d

475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

We first address whether the Town sufficiently alleged fraudulent or negligent representation against Smith and Olderman. In *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367 (Tenn. Ct. App. 2006), we set out the elements of these claims as follows:

> Plaintiffs argue that Cendant made fraudulent misrepresentations to the plaintiffs regarding the Residence. Cendant allegedly made these misrepresentations through Ms. Yankey and the Deeses' Disclosure:
>
>> In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.
>
> *Metro. Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992); *see also, Edwards v. Travelers Ins.*, 563 F.2d 105, 110-13 (6th Cir. 1977) (citing numerous Tennessee cases).
>
> Alternatively, the plaintiffs argue that if the alleged misrepresentations were not fraudulent they were at least negligent.
>
>> Liability for negligent misrepresentation will result, if defendant is acting in course of his business, profession, or employment, or in transaction in which he has pecuniary interest, and defendant supplies faulty information meant to guide others in their business transactions, defendant fails to exercise reasonable care in obtaining or communicating information, and plaintiff justifiably relies upon information. In order to prevail in a suit for negligent misrepresentation, the plaintiffs must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information.

*Williams v. Berube & Assocs.*, 26 S.W.3d 640, 644-45 (Tenn. Ct. App. 2000) (citations omitted).

*Id.* at 371.  As with fraudulent misrepresentation, negligent misrepresentation must be based on a statement concerning a material past or existing fact.  *Henley v. Labat-Anderson, Inc.*, No. 03A01-9104-CV-126, 1991 WL 120403, at *2 (Tenn. Ct. App. July 9, 1991).  In *Henley*, we noted that "plans, expectations, and intentions concerning future hiring" did not constitute past or existing facts.  *Id*.  The Town says that the past or existing fact misrepresented in this matter was Smith's statement that Oldsmith would cover the costs TDOT would not cover when Smith knew that was false when he said it.  In response, Oldsmith argues that a statement about a future undertaking is not a past or existing fact.  Oldsmith also disputes the alleged promise here.

In our judgment, the Town's allegations better fit the claim of promissory fraud.  When an alleged misrepresentation concerns a false promise to do something in the future, promissory fraud is implicated, as this Court has described:

> We note, however, that future promises may sustain a claim for promissory fraud.  Following a pronouncement by the Tennessee Supreme Court that it would adopt the majority view allowing claims of promissory fraud "in a proper case where justice demands[,]" this Court has considered the tort on a number of occasions.  *Id*. at *3 (quoting *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978) (applying the majority rule but concluding that the facts did not support the promissory fraud claim) (quoting *Bolan v. Caballero*, 220 Tenn. 318, 326, 417 S.W.2d 538, 541 (Tenn. 1967) (first recognizing the possible viability of the tort))); *see, e.g., Isaac v. Ctr. For Spine, Joint, & Neuromuscular Rehab., P.C.*, No. M2010-01333-COA-R3-CV, 2011 WL 2176578, at *6 (Tenn. Ct. App. June 1, 2011) (applying the majority view); *Houghland v. Houghland*, No. M2005-01770-COA-R3-CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006) (outlining the elements of promissory fraud as: "(1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform."); *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989) (discussing the tort); *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 80-81 (Tenn. Ct. App. 1983) (same); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980) (opining that the Tennessee Supreme Court would follow the majority rule with regard to claims of promissory fraud).  In those cases, we have held that recovery is limited "to those cases where the statement of

intention is shown to be false when made (i.e., a misrepresentation of actual present intention) by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Farmers*, 664 S.W.2d at 80-81; *see also Keith*, 780 S.W.2d at 754 (holding that in order to establish promissory fraud, the statement "must embody a promise of future action without the present intention to carry out the promise"). Additionally, "[i]t is essential to recognize that, in the context of a claim of promissory fraud, 'the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent.' This is because . . . 'not every broken promise starts with a lie.'" *Isaac*[ ], 2011 WL 2176578, at *6 (quoting *Styles v. Blackwood*, No. E2007-00416-COA-R3-CV, 2008 WL 5396804, at *7 (Tenn. Ct. App. Dec. 29, 2008)).

*Fitzgerald v. Hickman Cnty. Gov't*, No. M2017-00565-COA-R3-CV, 2018 WL 1634111, at *18 (Tenn. Ct. App. Apr. 4, 2018), *no appl. perm. appeal filed*.

Here, the Town alleged that Smith intentionally misrepresented a fact material to the transaction—how much Oldsmith would contribute to the intersection improvement. The Town alleged in its counterclaim that "Counter-Defendants' representation was false when made, as Olderman swore under oath that Counter-Defendants never intended that Defendants would pay more than their proportionate share, 12%, of the Traffic Improvements." The question of how much Oldsmith would contribute to the intersection project was material to the BOMA's consideration of whether to grant Oldsmith's rezoning request given the projected increase in traffic and associated costs. Second, the Town alleged that "Counter-Defendants' false representation was made either knowingly or without belief in its truth or was made recklessly, in that Smith clearly advised the Board that Counter-Defendants would contribute the difference between the total cost of the Traffic Improvements and what TDOT contributes. . . ." Third, regarding damages, the Town alleged that "[t]he Board reasonably relied on Counter-Defendants' false representation by approving Ordinance 18-08 despite substantial concerns regarding the traffic. . . ." and that "[b]ecause Counter-Defendants have not paid the $688,030, the citizens of the Town are required to bear the burden of Counter-Defendants' misrepresentation to the Board." Fourth, the Town pointed to Olderman's affidavit to allege that Smith never intended to fulfill his promise.

While the Town has not explicitly named its claim as promissory fraud, it has alleged facts corresponding to each element of promissory fraud. We have recognized that "simply because the plaintiff controls its own litigation does not prevent the court from determining the true nature of the claims alleged." *Wortham v. Kroger Ltd. P'ship I*, No. W2019-00496-COA-R3-CV, 2020 WL 4037649, at *8 (Tenn. Ct. App. July 16, 2020), *no*

*appl. perm. appeal filed.* We find that the Town has successfully alleged promissory fraud against Smith.[2]

Olderman's case is different. The Town's only allegation against Olderman is that he attended the hearing where Smith made his remarks and failed to correct Smith. That does not amount to an act or omission for purposes of alleging promissory fraud as Olderman is not alleged to have done or said anything at all. We hold that Olderman's mere passive attendance at the hearing does not establish a claim of promissory fraud against him. Likewise, the mere fact of Olderman's LLC membership does not render him liable for the LLC's actions. Nothing actionable has been alleged against Olderman. He just attended the hearing. We affirm the Trial Court's denial of joinder as to Olderman.

We next address whether the Trial Court erred in finding that Smith was immune from liability for tort claims arising out of actions taken by him on behalf of Oldsmith. The Town cites Tenn. Code Ann. § 48-249-114 in support of its argument that Smith is not shielded from individual liability for his own acts or omissions simply because he acted on behalf of an LLC. Tenn. Code Ann. § 48-249-114 provides, as relevant:

(a) LIMITED LIABILITY RULE.

(1) Except as provided in subsections (d) and (f):

(A) The debts, obligations and liabilities of an LLC, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the LLC;

(B) A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts, debts, liabilities or obligations of the LLC; and

(C) A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts or omissions of any other member, holder, manager, officer, director, employee or other agent of the LLC.

(2) Notwithstanding subdivisions (a)(1)(B) and (C), a member, holder of financial rights, director, manager, officer, employee or other agent <u>may be personally liable by reason of such person's own acts or omissions.</u>

---

[2] We emphasize that the Town's allegations remain just that. We take no position on the underlying merits of the Town's claim.

Tenn. Code Ann. § 48-249-114(a) (emphasis added).[3]

In turn, Oldsmith relies on the legal principle that members of an LLC are not individually liable for an LLC's actions. Oldsmith cites among other cases *Tarver v. Ocoee Land Holdings, LLC*, No. E2010-01759-COA-R3-CV, 2011 WL 12701893 (Tenn. Ct. App. Sept. 19, 2011), *no appl. perm. appeal filed*, in which we found that an LLC rather than its managing member who signed the agreement in question on the LLC's behalf was liable for breach of contract. *Id*. at *10. We concluded, as relevant:

> The weight of the evidence presented at trial demonstrates that everyone involved in the lots 17, 18 and 19 transactions knew that Glen Fetzner individually was not the intended buyer under the contract. The evidence further demonstrates, based on the easement document, the addendum to the P & S Agreement and the warranty deed that it was the intent of the parties that Ocoee Land Holdings, LLC was the buyer.

*Id*. In *Tarver*, we observed that "Mr. Fetzner, as a member of Ocoee Land Holdings, would have had the authority to execute the P & S Agreement on behalf of the LLC," and that "if he entered into the agreement in his capacity of managing member of the LLC, he would not be held individually liable for the LLC's breach of the contract." *Id*. at *8.

While Oldsmith is correct that an LLC member may not be held individually liable for an LLC's tortious behavior simply by virtue of membership in the LLC—such protection being one of the very points of the existence of limited liability companies—it is not the case that members of LLCs are *ipso facto* immune from being held individually liable for their own tortious acts or omissions while acting on behalf of the LLC. This Court has stated, for instance, that "an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer." *Brungard v. Caprice Recs., Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980). LLC membership affords protection to members from exposure to liability for the company's acts, but it is not a license for an LLC member to avoid individual liability for that person's own acts or omissions. The Town alleged that Smith falsely promised Oldsmith would cover the costs that TDOT would not, resulting in the Town incurring damages based on a promise Smith never intended Oldsmith to keep. This was not an instance in which, for example, Oldsmith was the true contracting party, and Smith acted on Oldsmith's behalf to sign a contract, as in *Tarver*. The Town's allegation pertains to Smith's personal conduct. The Town alleges that Smith appeared at the hearing and promised financial support Smith knew would not

---

[3] This statute was amended in 2020, but the amendment has no bearing on the appeal before us.

be forthcoming. Smith's own acts or omissions are at issue. The fact that Smith appeared at the hearing on behalf of the LLC was not a shield for Smith to engage in tortious conduct as the Town alleges.[4] We hold that Smith is not immune from individual liability, and the Trial Court erred in holding otherwise.

The final issue we address is whether the Trial Court abused its discretion in declining to add Smith as a party. The Town's motion for joinder was filed pursuant to Rules 13 and 20 of the Tennessee Rules of Civil Procedure. Tenn. R. Civ. P. 13.08 provides: "When the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counterclaim or cross-claim, the court may order them to be brought in as defendants as provided in these rules, if jurisdiction of them can be obtained." Meanwhile, Tenn. R. Civ. P. 20.01 provides:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Tenn. R. Civ. P. 20.01.

In its brief, the Town states: "Because Oldsmith, Smith, and Olderman may be jointly and severally liable for Smith and Olderman's misrepresentations, complete relief cannot be granted absent adding Smith and Olderman as counter-defendants." In response, Oldsmith argues: "Oldsmith is the sole party alleged to be financially responsible for the traffic signal improvements. Neither Olderman nor Smith is personally liable, and Nolensville's ability to obtain a judgment and enforce it against Oldsmith will not be impaired in their absence." We review the Trial Court's denial of the Town's motion for joinder for abuse of discretion.

---

[4] These are now just allegations, and we take no position as to the Town's claim.

The Trial Court's decision was based on two main points. First, the Trial Court concluded that the Town could obtain complete relief without joining Smith as a counter-defendant. However, we find no evidence to support that conclusion. Based on this record, it is unknown whether the Town can obtain complete relief without Smith. In this respect, the Trial Court's denial of joinder lacks a factual basis properly supported by evidence in the record. Second, the Trial Court ruled that Smith could not be held individually liable in this matter. That ruling was in error, as Smith may be held individually liable for his own tortious acts and omissions, if any, and the Town has sufficiently alleged promissory fraud against him. In this respect, the Trial Court failed to identify and apply the most appropriate legal principles applicable to the decision. Thus, the Trial Court's denial of the Town's motion for joinder of Smith lacked a sufficient factual basis and rested upon an error of law. Under these circumstances, denying the Town's motion for joinder as to Smith was not an acceptable alternative disposition. Therefore, we find that the Trial Court abused its discretion in denying the Town's motion to join Smith as a counter-defendant.

## **Conclusion**

We affirm the Trial Court's denial of joinder as to John Olderman. Otherwise, we reverse the judgment of the Trial Court. This cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against Appellees, Christopher Smith, CCD Oldsmith Henry, LLC, and Oldsmith Group, LLC.

_____
D. MICHAEL SWINEY, CHIEF JUDGE